No. 12,626.

KATHERINE FERRIS (DIVORCED WIFE OF GEO. HENNINGS) VS. S. HERN-
SHEIM BROS. & CO., ET ALS.

SYLLABUS.

1. It is the duty of factory owners to keep the flights of stairs in their estab-
lishments in good condition for the easy and safe passage up and down of
their employees, whose duties require them to use the staircases.

2. Not doing so and accidents occurring in consequence thereof, they are re-
sponsible for injuries received.

3. If men, regularly employed to make repairs where and when needed, neglect
such duty, their fault is imputable to the master and he is held accountable
therefor.

ON APPEAL from the Civil District Court for the Parish of Or-
leans. *Monroe, J.*

*A. E. Blackmar* and *Benjamin Rice Forman* for Plaintiff and Ap-
pellant.

*Dinkelspiel & Hart* for Defendants and Appellees.

Argued and submitted March 8, 1898.
Opinion handed down June 13, 1898.
Rehearing refused January 23, 1899.

The opinion of the court was delivered by

BLANCHARD, J.    Defendants were proprietors of a cigar and tobacco
manufactory in the city of New Orleans.

Plaintiff was an employee therein as stripper of tobacco, and alleges
that, while engaged in the discharge of her duties, in descending a
stair case from one story of the building to another, with her arms
laden with working boards and leaf tobacco, her foot was caught by
the broken and upturned zinc covering on the stairs and she was
precipitated headlong down the stair case, inflicting severe personal
injuries, rendering her unconscious for days, confining her in the hos-
pital for months and causing her great suffering, pain and anguish.
She represents that her leg was broken in several places and in conse-

quence the limb is crippled and deformed; that several of her ribs were broken, her right arm and shoulder bone broken and dislocated; and that she is rendered by these injuries physically incapacitated from performing the labor necessary to the earning of her subsistence.

She charges the unsafe and dangerous condition of the stair case, that the same was unknown to her at the time, and that the accident from which she suffered was the result of the gross carelessness and negligence of the defendants.

She brings this action for compensation and lays her damages at ten thousand dollars.

Defendants individually excepted that they are not members of any firm known as S. Hernsheim Bros. & Co., and that no such firm is in existence, which exception the court ordered referred to the merits. They then filed an exception of no cause of action, and, reserving the benefit of all exceptions, answered pleading the general issue, denying injury and damage to plaintiff as alleged by her, denying their liability, and charging contributory negligence and fault on part of plaintiff.

There was judgment rejecting her demand and she appeals. The case was tried without a jury and we have not been favored with the reasons of the trial judge for the decree rendered.

Plaintiff worked on the fourth floor of the factory building. A stair case communicated with the floor above, where boards were kept used by the tobacco strippers in their work. These boards were made from seasoned lumber. were from three and a half to four feet long, and varied from six inches to about twelve inches wide. When the leaf tobacco is stripped of its stems it is spread upon these boards. As the boards are needed by the women and girls in their work they are required to ascend by the stair case to the fifth floor and procure them. They are brought down the steps in their arms. These were the methods observed at the factory when the accident complained of occurred. About ten oclock on the morning of the accident, plaintiff, a young woman, about twenty-seven years of age, ascended the stair case to obtain a supply of boards. She procured them and started with them in her arms down the flight of steps. When a few steps from the top she tripped and fell headlong down to the bottom. She was severely injured, was removed to the dressing room of the fourth floor and thence to the Charity Hospital, where she received surgical treatment.

The theory of her side of the case is that the steps of the stair case were in bad and unsafe condition, the zinc covering on the same broken and torn, that in descending with the boards (her arms and hands occupied in holding them) her foot was caught in one of the torn places of the zinc covering, she lost her balance and was precipitated, boards and all, to the floor below.

The theory of the defence is that the steps were not in an unsafe condition, that plaintiff's foot did not get caught in a torn place of the zinc covering, but that it was either caught in the folds of her dress, or she trod upon her dress, was tripped and her fall occasioned in this way, or otherwise, by the want of care and prudence on her part.

The question presented is mainly one of fact. If plaintiff's fall down the flight of steps was occasioned by the fact that the stair case was not maintained in a reasonably safe condition, if ordinary care and prudence in this regard had not been observed by the owners of the factory, she is entitled to recover for injuries received, unless by her own fault or negligence she has contributed to the accident. What is "contributory negligence" has been the prolific subject of definition by the courts and text writers. It has been aptly stated to be "a want of ordinary care upon the part of a person injured by the actionable negligence of another, combining and concurring with that negligence, and contributing to the injury as a proximate cause thereof without which the injury would not have occurred."

A. & E. Ency, of Law, Vol. 4, p. 17.

A mass of testimony was taken. As usual in such cases, it is conflicting—so much so that it is no easy task to determine, as to some of the facts, on which side the preponderance rests.

We find the plaintiff's theory of the case sustained by her own testimony, by that of Anita Moore, Marie Brown and Mrs. Roland Cobb, all of whom were working women employed at the factory when the accident occurred, occupying the same floor and engaged in same kind of work the plaintiff was.

Miss Moore, a girl of fourteen, testifies she was ascending the stairs as plaintiff was descending, had just passed the latter when she fell. While this witness was considerably "shaken up" on cross-examination and made some contradictory statements, her evidence is not without its weight. She was young and inexperienced, and had never been in court before, and appeared a second time to correct a mis-

statement which she says she had made through excitement when first on the stand.

All these witnesses testify to the bad condition of the steps, the broken and torn zinc near the top, from which point plaintiff fell.

Miss Brown, who had worked there for ten years, says her dress was caught in the torn zinc three or four times on the same steps, causing her to fall, and that the zinc covering was pretty badly torn near the top of the steps at the time of the accident. She had occasion to note the fact particularly because of her dress getting caught in it, and once or twice her foot was caught.

Mrs. Cobb testifies that the steps were in bad condition, had tripped several times on them herself. She says the zinc was broken on the steps near the top. The tripping which had befallen her was occasioned by the broken zinc, and she had complained of it to her fellow-working women. On the very morning of the accident she had tripped on the stair case near the top. Had at the time gone to the floor above after boards. She saw plaintiff when she fell.

A Mr. Powers, an engineer, who had long worked at the factory as such, could not state his recollection, after the long lapse of time, as to this particular flight of steps, but testified he had discovered torn zinc on the stairs in the factory on several occasions. He was engaged at the factory at the time of the accident.

On the other hand, defendant's theory of the case, so far as the condition of the stair case is concerned, appears to be sustained by the witness Finke, who was foreman of the lower floor at the time of the accident, and is still employed there. He states, to the best of his recollection, that while there were some torn places in the zinc on the flight of steps in question, viz.: at the bottom, near the middle and at the extreme top, the second, third and fourth steps from the top were in good condition. So also were other steps immediately below those. He described the zinc, when broken, as "merely worn out and cracked," and did not recollect any pieces "turned up." He says he examined the steps after the accident.

He is corroborated by the witness Farr, who was and is employed as a "handy man" at the factory. Some time before the accident this witness had repaired one of the steps on this flight. There had been no other repairs. He was not at the factory at the time of the accident; was at the residence of one of defendants, working, and had been for several days.

Several other witnesses—women who worked at the factory then. and now, two of them colored—also corroborated Mr. Finke as to the condition of the steps. But in the main they confine themselves to declaring they saw no holes, or torn places, in the zinc on the steps, and do not say they had examined the steps to ascertain their condition.

We are not impressed with this corroborative testimony sufficiently to give it the weight necessary to turn the scale, on this branch of the case, against the plaintiff, who adduced positive and affirmative evidence of the out-of-repair condition of the stair case. And we are confirmed in this view by a significant circumstance or two noted in the testimony.

For instance, Mr. Finke, who seems to have been in charge of that part of the building at the time of the accident, says he had given orders to Farr, whose duty it was to do repairs, to repair the steps in question, and that this was some three or four days before the accident. Farr had not obeyed this direction, but, instead, had gone up to do work of repairing at the residence of one of defendants.

Another circumstance militating against defendant's theory is found in the haste with which the zinc was torn up from the entire flight of steps immediately following the accident. Mr. Finke was called as soon as plaintiff had fallen, and having made provision for her removal to the hospital, proceeded to make an examination of the steps. While minimizing, on the stand, the defects he discovered in the way of broken zinc, and confining the same *to a very few of the steps,* he immediately ordered *the whole* of the zinc covering removed and it was done that day. No time seems to have been given the friends of the lady to make an examination on her behalf.

On the whole we conclude the weight of the evidence sustains plaintiff's contention that the stairway was not in good condition and was unsafe.

She fell from one of the steps near the top. It is not material which one, and we attach no importance to the dispute or conflict of evidence as to the particular step where she tripped.

Now, what caused her to trip? As against the contention of plaintiff that her foot was caught in the torn zinc defendants produce two colored women, who were then and are now employees of the factory. and they testify to the effect that plaintiff's fall was occasioned by her foot getting caught in her dress, stepping upon her dress, etc. These women were sitting near the head of the flight of steps and claim to

have been looking at plaintiff when she fell. They were engaged in conversation with each other. One of them was at work stripping tobacco, the other was doing nothing.

They took such particular notice of the plaintiff that they actually counted the number of boards in her arms, one of them fixing the number definitely at seven, and the other more discreetly saying five or six. Plaintiff testifies she had four.

The statement of these witnesses that plaintiff's fall was caused by stepping on her dress as she went down the stairs is disproved by a piece of physical evidence disclosed by the record. Plaintiff, on one of the days she appeared on the stand, was dressed in the identical dress or wrapper she wore at the time of the accident. She was required to stand up and the distance from the bottom of the skirt to the floor was measured. It was found to be four inches. A dress four inches short from the floor might be trod upon by the woman wearing it ascending a stair case, but descending a stair case, the steps of which are seven and three-quarter inches high, she could not possibly tread upon her dress. Standing on one step the bottom of her dress would be eleven and three-quarter inches to the floor of the step below her. How could she tread upon it in taking the downward step?

We cannot accept this theory that plaintiff is chargeable with carelessness in treading upon her dress and precipitating her own fall.

Nor will it do to say she knew of the defects of the steps, and, knowing them, was guilty of contributory negligence in going up and down the stair case. There is evidence in the record that for four or five days preceding her fall she had not used them, and, besides, with her arms full of boards, held in front of her, she could not, in descending, see each step. But, be that as it may, it was made her duty to use the stair case.

The boards upon which she was required to spread the tobacco stemmed were kept on the upper floor. They were essential in her work. They were not brought to her on the floor upon which she worked. She was expected and required to go after them. There was no way to obtain them except by going up and down that flight of steps. Nor is she chargeable with recklessness or carelessness in descending them with four of the boards in her arms. She could well carry that many down a flight of steps that were safe, and there was no way to get them down except to carry them. All through each

working day the factory girls carried down the boards in a similar way.

The fact that they, as well as plaintiff, passed safely down on numer-ous occasions, does not relieve defendants of liability for the accident that at last occurred by reason of the bad condition of the stairway. Existing dangers are more often escaped than otherwise, but because this is so it does not follow that when it is not escaped and injury results, the party directly responsible for the existence of the danger goes free of liability.

It was the duty of the factory owners to keep this flight of steps in good condition for the easy and *safe* passage of their employees up and down.

Not doing so and accident occurring, they are responsible in damages for injuries received.   Clairain vs. Telegraph Co. 40 La. Ann. 178; Bailey on Master's Liability for Injuries to Servant, p. 35.

Defendants, be it said to their credit, did have men employed to keep the stairways and other parts of the building in repair and safe for the employees.   The evidence, indeed, discloses unusual care in this regard.   But if these men neglected their duty their fault is imputable to the master and he is responsible therefor.

Faren vs. Sellers, 39th La. Ann. 1011.

With respect to the injuries sustained by plaintiff, her case is greatly exaggerated in the petition filed.   If she were rendered unconscious at all by the fall it was but momentary.   She was conscious while in the dressing room, to which she was immediately conveyed, and the physicians testify she was not unconscious at the hospital. She was in the hospital only twenty-six days.   Instead of her leg being broken in several places it was not broken at all.   Its only injury was a sprain and wrench of the knee, which neither crippled it, nor deformed it, nor shortened it as charged, and it is entirely cured. None of her ribs were broken; neither was her arm broken.   Her worst hurt was in the right shoulder, the blade of which was dislocated, and which, the evidence seems to disclose, will never be permanently restored.   The shoulder droops a little in consequence of it.   It disables her to a certain but limited extent, and that can be rectified by her submission to an operation suggested.   She was in a charity ward at the hospital and had nothing to pay, and if there had been charges her employers had notified the hospital officials they stood responsible therefor and wished her given every reasonable attention.

Besides this, they paid her wages, what she was earning at the factory when injured, continuously for nine weeks. Whatever judgment she is entitled to, its amount should be mitigated by the kindness and care bestowed upon her by the defendants following the accident.

We think eight hundred dollars sufficient compensation under these circumstances, and, accordingly, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered and decreed that plaintiff do have and recover of defendants, Isadore Hernsheim, Joseph Hernsheim, and the heirs of Simon Hernsheim, deceased, *in solido,* the sum of eight hundred dollars, with legal interest from this date, together with costs of both courts.