WULFF *v.* BOSSLER.

1. MASTER AND SERVANT—SAFE PLACE TO WORK—PERSONAL INJURIES.

It is incumbent upon the owner of a manicuring and hairdressing establishment operated in the basement and first floor of a building to furnish a person customarily employed as scrubwoman a safe place to work, and he must keep a flight of stairs connecting the two floors adequately lighted and in good condition for easy and safe passage.

2. SAME—SAFE PLACE TO WORK—NEGLIGENCE—QUESTION FOR JURY.

The negligence of an employer due to the inadequate lighting of premises is usually a question for the jury.

3. SAME—WORKMEN'S COMPENSATION ACT—DEFENSES.

The defense of contributory negligence, assumption of risk and negligence of a fellow employee are not available to an employer who has not elected to come under the workmen's compensation act.

4. JUDGMENTS—DIRECTED VERDICT—STATUTES.

Under the Empson act (Act No. 217, Pub. Acts 1915, § 1, 3 Comp. Laws 1915, § 14568), providing that should the trial court see fit to reserve a decision upon a request which, if granted, would dispose of the case as a matter of law, but submit the claimed issue of fact to the jury for a verdict to rest contingent on the disposition made of the reserved question of law, then, "after the case is thus submitted to

the jury, or after receiving and recording the verdict of the jury and before judgment is entered \* \* \* the court may hear arguments of counsel for and against said request, but in all cases shall receive and record the verdict of the jury as rendered," a judgment granting a motion to set aside the verdict for plaintiff and of no cause of action is improper where the court "clinched" the verdict by an immediate judgment, and the motion was not considered until about three weeks after rendition of the judgment and no order was at that time made directly disposing of the original official record of a judgment on the verdict as rendered.

Error to Kent; Brown, J. Submitted October 19, 1917. (Docket No. 65.) Decided December 27, 1917.

Case by Christine Wulff against Joseph A. Bossler for personal injuries. Judgment for defendant *non obstante veredicto.* Plaintiff brings error. Reversed, and remanded.

*William J. Landman,* for appellant.

*Frank W. Hine* and *Maynard & Chase,* for appellee.

STEERE, J. This action was brought by plaintiff to recover damages for personal injuries sustained on November 5, 1915, by falling down stairs in defendant's place of business where she was employed as a scrubwoman. The stairway down which she fell was an inside one connecting the first floor of defendant's place of business with the basement floor. The negligence claimed is a failure to properly light the same and keep it "clean and free from fruit skins and other foreign substances that might cause any one traversing said stairway to slip and fall."

Defendant conducted a hairdressing and manicuring establishment at Monroe avenue, in the city of Grand Rapids, employing female help, and at the time of the accident had failed to avail himself of the provisions of the workmen's compensation law. His workroom,

hot water plant for shampooing, etc., were on the basement floor, which was frequented by the help, and used in connection with the store above it during business hours. Plaintiff was employed to scrub the floors and do other cleaning around defendant's place every Tuesday and Friday. She had regularly rendered such service on those days for about five years prior to her injury. Her work required her to use the stairs down which she fell. The accident occurred shortly after her arrival at about 8 o'clock in the morning, as she was on her way to the basement to get her pail and mop and hang up her street clothing. She testified that it was a rather dark morning, the stairway was not lighted as usual, and there was something upon which she stepped when going down which caused her to slip and fall. It was admitted by defendant that he customarily kept an electric light burning in the stairway during business hours, but he contended it had been turned on that morning before her arrival and was burning when she fell.

At the close of plaintiff's testimony defendant's counsel moved for a directed verdict in his favor, which was then denied but renewed at the conclusion of all the testimony. After hearing counsel the court said:

"I will submit this case to the jury because of the authority given in the judicature act, when the testimony is taken. I will submit it to the jury and the court can consider your motion just as well in the course of a couple of weeks as now. * * * Under the judicature act the court can consider the matter just as well within a week or so if you should have occasion to renew your motion."

Thereupon the court submitted the case to the jury upon the question of defendant's negligence in failing to light the stairway, and a verdict of $500 was rendered in plaintiff's favor, on June 13, 1916, upon which

the verdict and judgment thereon were recorded by the clerk in the journal as a part of the business of the court upon that day and signed by the judge in the regular course of proceedings.  On the following day, June 14, 1916, defendant's counsel moved the 'court—

"to direct a verdict in favor of defendant as requested by defendant's attorney at the close of the testimony in the above-entitled cause, and to set aside the verdict of the jury in favor of the plaintiff and against defendant; and, further, if it is the desire of the court to hear further argument of counsel for and against said request, that the court fix the time for such argument."

Argument was thereafter heard upon this motion, and on July 6, 1916, the court reviewed the argument, stating that at the time the case was submitted the question of defendant's negligence was not free from doubt in the mind of the court, and was therefore allowed to go to the jury, so that should the Supreme Court reverse the action of the trial court, it would be unnecessary to have another trial and place plaintiff to a double amount of expenses, but upon consideration of the whole case it was the opinion of the court that it was ruled by *Gleich* v. *Detroit Free Press,* 169 Mich. 247 (135 N. W. 306), concluding:

"I will say that the motion in this case to set aside the verdict rendered by the jury will be granted, and a verdict may be entered for the defendant of no cause of action."

Whereupon, under the direction of the court, a judgment of no cause of action was entered, upon that date, in part as follows:

"The cause having been heretofore duly brought on for trial before a jury, said jury rendered a judgment for the plaintiff for $500 on June 13, 1916.  Now comes counsel for the defendant, moving the court to set aside the said judgment rendered by the said jury on June 13, 1916, which motion was granted by the

court, the court directing a verdict for the defendant of no cause of action. The court now here after mature deliberation therefore finds that the said defendant is not guilty in manner and form as the said plaintiff hath in her declaration in this cause alleged," etc., concluding in the usual form of judgment for defendant.

While various assignments of error are urged and argued by plaintiff's counsel, the primary and controlling question presented by this record is whether plaintiff's testimony, taken as true and viewed in its most favorable light, carried defendant's negligence to the jury as an issue of fact. The trial court was impressed that the holding of this court in *Gleich* v. *Detroit Free Press, supra,* was controlling and defendant should be absolved from liability as a matter of law. Had plaintiff in the instant case brought her action against the owner of the building, instead of her employer, the case would be more nearly analogous.

In the *Gleich Case* plaintiff, who was not in the employ of the owner of the building, charged that his fall down a stairway was due to defendant's negligence in failing to sufficiently light the stairs, which were not out of repair, covered with rubber matting and provided with a hand rail at the side. Plaintiff started down them, carrying a musical instrument in one hand and a music rack in the other. While attempting to cross to the side on which was the railing he lost his balance and fell. He did not make clear what caused him to fall. This court there held his contributory negligence precluded recovery, which alone entitled defendants to a directed verdict, and also said of their alleged negligence that it was based solely upon failure to light the hallway and stairs which, in the absence of contract, defendants, as owners, or landlords, were not required to do—citing a number of cases involving the duty of owners or landlords in that particular to tenants, their guests and customers. Neither

the relations of master and servant, nor the question of providing a safe place for employees, are discussed or involved in the *Gleich Case* and authorities to which it refers.

When the accident in question occurred defendant was conducting his business in this building on the ground and basement floors which were connected by an inclosed, inside stairway, but scantily lighted on a clear day when its door was open by the light which reached it from the outside windows of the two floors. It was regularly in use by himself and his employees, mostly women, during business hours, as their work required them to pass from one floor to the other, and was a necessary part of their place of employment. It was about 4½ feet wide, consisted of a top landing and 14 bare steps, and inferably had no hand rail on either side, as no reference is made to one by any of the witnesses in describing the stairway, and a Miss Hall, called by defendant, who testified the light was burning at the time of the accident, stated she had been down the stairs so often she knew just how that landing was, and "felt safe in going down on a dark, cloudy day without having the lamps lit," by just running her hand along the wall. Defendant testified that he regularly turned on this light on his arrival in the morning at about 7:30, thought it would sometimes be unsafe without a light there, and he kept it turned on during business hours, whether it was a sunshiny or cloudy day, for the safety of himself and his employees, although on a bright sunshiny day it would not be necessary.

It is undisputed that the accident occurred on a dull, cloudy morning; that while going down the stairway in the line of her duties plaintiff slipped and fell head first to the floor of the basement, striking upon her hands in such a manner as to break both her wrists, permanently injuring her. She testified that her fall

was caused by some foreign substance upon the stairway on which she slipped and which she could not see because the light was not turned on. Whether the steps were clean and the stairway light turned on at the time are facts in dispute.

That it was the duty of the master to furnish the servant a reasonably safe place in which to work, according to the location and nature of the employment, is settled law. It was defendant's duty to keep this flight of steps in good condition for the easy and safe passage of his employees going up and down. *Ferris* v. *Hernsheim,* 51 La. Ann. 178 (24 South. 771).

"Usually the negligence of the employer is a question for the jury, where the evidence tends to show that the place where the injury was received was inadequately lighted." 3 Labatt on Master and Servant (2d Ed.), § 1005.

Counsel for defendant emphasize that plaintiff was familiar with this stairway, knew it was usually lighted, and where the light was located; that all conditions were known to her, and if, as she claimed, she could not reach the light to turn it on, she could easily have had it done by others. These matters come within defenses of assumption of risk and contributory negligence, which, even if open for consideration, would be questions for the jury under the somewhat analogous case of *Strickland* v. *Woolworth Co.,* 143 Mo. App. 528 (127 S. W. 628), where a female employee of defendant slipped on the steps of a dark stairway leading to the basement and fell. She was familiar with the stairway, and the fact that it was provided with an electric light which she might have turned on before starting down, but it was held that the significance of those facts was for the jury. Here, however, defendant had not elected to come under the provisions of the workmen's compensation law, and the defenses of contributory negligence, assumption of risk, and neg-

ligence of a fellow employee were not open to him. Section 1, pt. 1, Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5423). The only available defense to him was freedom from negligence on his part, which we conclude was, under the conflicting evidence, clearly an issue of fact for the jury.

Under the condition of the record this court will not in form, "order judgment entered in accordance with the verdict of the jury as rendered," as provided in the so-called Empson act (Act No. 217, Pub. Acts 1915, 3 Comp. Laws 1915, § 14568 *et seq.*), which the trial court apparently had in mind in the course followed and inadvertently assumed was a portion of the judicature act. While there is an indicated attempt to adopt the course authorized by the Empson act, the court clinched the verdict which was taken by an immediate judgment. That act distinctly provides that should the court see fit to reserve decision upon a request which, if granted, would dispose of the case as a matter of law, but submit the claimed issue of fact to the jury for a verdict, to rest contingent on the disposition made of the reserved question of law, then—

"after the case is thus submitted to the jury, or after receiving and recording the verdict of the jury and before judgment is entered in said case, the court may hear arguments of counsel for and against said request, but in all such cases shall receive and record the verdict of the jury as rendered." Section 1.

In this case a final judgment authenticated by the signature of the presiding judge was entered and recorded on June 13, 1916, and the proceedings under inquiry were not had until July 6, 1916. No order was then made directly disposing of the original official record of a judgment on the verdict as rendered, which we cannot assume was unauthorized or inadvertent. The statutes of this State require that a journal shall be kept of the proceedings in circuit court, by the clerk

under direction of the presiding judge, which shall at least be verified by the signature of the judge before whom the business was transacted. 1 Comp. Laws, § 314; 4 How. Stat. (2d Ed.) § 11789; 3 Comp. Laws 1915, § 12138. When so entered and signed as of a certain date they are to be taken as a true record of the official action of the court on that date. Unquestionably circuit courts have a general power to correct inadvertent entries upon their records, and to set aside verdicts and judgments thereon, and grant new trials when, upon proper motion and showing, the ends of justice so require in the opinion of the court, but the action taken by the court on July 6, 1916, does not purport to be the exercise of that authority.

It follows that the second judgment entry must be vacated and held for naught in its entirety, leaving the record of the case in the circuit court to stand as apparently written up and authenticated by the signature of the presiding judge on June 13, 1916.

The judgment appealed from is therefore reversed, with costs to plaintiff, and the case remanded to the jurisdiction of the trial court.

Kuhn, C. J., and Stone, Ostrander, Bird, Moore, Brooke, and Fellows, JJ., concurred.