KINTZ *v.* GALVIN.

1. FRAUD—ACTION MAY NOT BE MAINTAINED ON ABROGATED CONTRACT.

An action for fraud in misrepresenting the rental income of real property, received by plaintiffs in an exchange of property with defendants, could not be maintained where it appeared that after plaintiffs had been in possession for 10 months, and had full knowledge of the fraud complained of, they entered into a new and more favorable contract with defendants covering the same subject-matter as the original contract, which had the effect of abrogating and discharging the same.

2. JUDGMENT—JUDGMENT INADVERTENTLY ENTERED VOID—NON OBSTANTE VEREDICTO.

Where the trial judge reserved his decision, under 3 Comp. Laws 1915, § 14568 *et seq.*, on defendant's motion for a directed verdict, and submitted the case to the jury who returned a verdict in favor of plaintiffs, a judgment inadvertently entered thereon by the presiding judge of the circuit while the trial judge still had the question under advisement was without force and effect and void, and judgment for defendants *non obstante veredicto*, where justified under the facts, was properly entered under authority from the trial judge.

Error to Wayne; Webster (Clyde I.), J. Submitted April 6, 1922. (Docket No. 34.) Decided June 5, 1922.

Case by George Kintz and another against Martin E. Galvin and another for fraud in an exchange of real property. Judgment for defendants *non obstante veredicto*. Plaintiffs bring error. Affirmed.

*Albert E. Sherman* (*Victor H. Hampton,* of counsel), for appellants.

*Beaumont, Smith & Harris* (*John W. Beaumont, Ralph L. Aldrich* and *Archibald Broomfield,* of counsel), for appellees.

McDONALD, J.    This action is to recover damages because of fraudulent representations as to the income and value of an apartment building located in Detroit, Michigan.    At the time the controversy arose, plaintiffs owned a farm of 160 acres in Lapeer county, valued at $16,000, against which there was a mortgage of $5,500.    The defendants owned an apartment building consisting of nine apartments and three stores, located at the corner of Crane and Canfield avenues in the city of Detroit, valued at $37,000, and against which was a mortgage of $8,000.    Desiring to exchange these properties, the parties entered into an agreement, in writing, wherein plaintiffs were to deed the farm to defendants, who, in consideration therefor, were to give them a land contract for the purchase of the apartment building.    In the contract, the purchase price of the apartment building was to be $37,000.    The plaintiffs were to pay the difference between the agreed value of the properties in monthly payments of $200.    In connection with the agreement was a written statement by defendants, wherein it was represented that the apartments rented for $22.50 each per month; that the stores rented for $25, $30 and $35 per month, and that the yearly income was $3,510.    Pursuant to this agreement, the deed and land contract were executed on the 14th day of June, 1916.    When plaintiffs got possession they learned that instead of renting for $22.50 each, the apartments were being rented for $18 each; that two of the stores were vacant and that the yearly income was $2,364 instead of $3,510, as represented by defend-

ants.   The plaintiffs took no action to rescind the contract or to institute suit for damages, but continued in possession until May, 1917.   At that time they were in default for failure to make their monthly payments.   A new land contract was then made in which the value of the apartment building was again placed at $37,000, but to which was added the value of improvements in converting the three stores into apartments.   By the terms of this contract, plaintiffs were to pay $250 in monthly payments.   In October, 1917, they were again in default for failure to make their payments, and were ousted by writ of restitution in a summary proceeding begun by Julius Berman, to whom defendants had assigned the land contract and deeded the premises.

At the close of the testimony, counsel for defendants moved for a directed verdict for the reason that when plaintiffs entered into the new contract of May, 1917, they waived any right to recover for fraud growing out of the prior contract.   The court directed a verdict as to Katherine Galvin, but as to the other defendant submitted the case to the jury under the so-called Empson act (3 Comp. Laws 1915, § 14568 et seq.).   The jury returned a verdict for the plaintiffs in the sum of $13,025.18.   This was on the 13th of October, 1920.   On the 19th of October, judgment was entered on the verdict for the plaintiffs.   A motion for judgment non obstante veredicto was argued December 10th, and on March 11, 1921, judgment notwithstanding the verdict was entered for the defendant.   From this judgment plaintiffs have appealed.

There are two questions involved, the first of which is presented by assignments of error 1 to 6 inclusive. Did the plaintiffs, by entering into a second contract covering the same subject-matter, waive their right of action for fraud growing out of the first contract? The reason for the waiver under such circumstances

lies in the fact that with a full knowledge of the fraud and without reserving their right of action, the plaintiffs entered into a new contract which abrogated and superseded the one out of which their claim to damages arose. As there was no express reservation in the second contract, in determining the question of waiver, it is only necessary to consider whether that contract was of such a character as to abrogate and supersede the first.

"Whether the new contract is a modification of the original contract, or whether it supersedes the original contract entirely and replaces it for all purposes, is a question which depends primarily upon the intent of the parties." 4 Page on Contracts (2d Ed.), § 2489.

As the intent is not expressed in the language of the contract, it can only be determined from the scope and character of the contract itself, and from the oral testimony of the parties.

The plaintiff George Kintz testified on cross-examination in regard to the purpose of the second contract as follows:

"Q. Now, at some subsequent period, you came to Mr. Galvin, did you not, and asked him to advance some money to convert these stores into flats and make a new contract for a different amount, didn't you?

"A. Yes, sir.

"Q. And some six or eight months after the first contract of purchase was executed, you made an entirely new contract with Mr. Galvin, did you not?

"A. Yes, sir. * * *

"Q. To take the place of this contract?

"A. Yes, sir.

"Q. And the amount that Mr. Galvin advanced was added to the purchase—

"A. Yes, sir.

"Q. —price and the first contract was done away with entirely?

"A. Yes, sir."

In connection with this testimony, it is proper to

consider the surrounding circumstances attending the making of this new contract. The plaintiffs were in default; they were not able to make their payments; they had been in possession of the property, managing it, and collected the rents for ten months; they had full knowledge of the fraud and had complained of it to the defendants; they did not, however, assert any claim for damages; they merely asked for a new and more advantageous contract. This contract was made in accordance with their suggestions; it was a complete contract; it so fully covered the entire subject-matter that the contractual rights of the parties could be determined without reference to the original; it was not only of equal degree and scope with the original on the same matters, but by providing for a change in the character of the apartment building so as to increase the rentals, it contained a new agreement on the same subject out of which the cause of action arose. In this respect, it was inconsistent with the first contract.

"If the later contract does not expressly abrogate the earlier *in toto*, but is inconsistent therewith, the scope of the later contract determines whether any part of the earlier contract is in force. If the later contract between the parties covers the same subject-matter and has the same scope as the earlier contract, but is in whole or in part inconsistent therewith, the later contract abrogates the earlier contract *in toto* and is the only contract upon the subject between the parties." 4 Page on Contracts (2d Ed.), § 2492.

It is clear that in making the second contract the parties intended to abrogate and discharge the first. Such being the effect of their mutual act, it follows that no action can be maintained which is founded on or grows out of the original contract. On this question the circuit judge arrived at the correct conclusion.

The second question involves the right of the circuit judge to order and enter a judgment *non obstante*

*veredicto* for the defendant Martin E. Galvin, after judgment on the verdict for the plaintiffs had been entered.    It is presented by assignments of error 7 to 9 inclusive.    When the testimony was concluded, a motion was made to direct a verdict for the defendant. The court reserved his decision under Act No. 217, Pub. Acts 1915 (3 Comp. Laws 1915, § 14568 *et seq.*), known as the Empson act, and submitted the case to the jury.    The case was tried before Hon. Clyde I. Webster.    The verdict of the jury was rendered on October 13, 1920.    Six days later Hon. Ormond F. Hunt, then presiding judge of the Wayne circuit, entered a judgment for plaintiffs in accordance with the verdict.    On March 5, 1921, Judge Webster filed his opinion ordering a judgment for the defendants *non obstante veredicto.*    This judgment was entered by Judge Marschner on March 11, 1921.    On January 28, 1922, after the case was in this court, Judge Webster, on motion, made and entered an order vacating and setting aside the judgment entry of October 19, 1920.

It is the claim of counsel for the plaintiffs that the first judgment clinched the verdict, and that the judgment *non obstante veredicto* thereafter entered was unauthorized and should be vacated, citing *Wulff* v. *Bossler,* 199 Mich. 70.    In *Wulff* v. *Bossler* there were two judgments.    The original judgment was entered and verified by the judge who heard the case.    There was no reason to believe that it was unauthorized or inadvertent.    It was held that until that judgment was corrected or vacated the circuit judge had no authority to enter the subsequent judgment, which, therefore, should be set aside and held for naught. In the case under consideration, the record of the proceedings shows that the original judgment was unauthorized and inadvertent; it was not a valid and

legal judgment because it was not entered and verified or authorized by the circuit judge who heard the case.

In circuits where there are more than two judges the statutes of this State require a record of the court proceedings to be kept as follows:

"The record of the proceedings before each of the judges shall be entered in the journal of the court in the usual manner, and said journals may for convenience, at the option of said judges, be kept in separate books, appropriately marked, and said records shall be verified by the signature of the judge before whom the business is transacted." * * * 3 Comp. Laws 1915, § 12138.

It seems to be the practice in the Wayne circuit for the presiding judge of that court to sign the journal entry of the proceedings. The situation here presented affords a good illustration of the confusion that may be created by following that practice. Judge Hunt, who was at the time presiding judge, and who was a stranger to the proceedings, ordered and entered a judgment on the verdict, while the judge who had charge of the case was considering whether such judgment should be entered. To hold that a judgment so entered is of any force and effect would result in taking away from the trial judge that further control of the case which the Empson act expressly gave to him. The case had been assigned to Judge Webster and was tried before him. It was for him to determine if a judgment should be entered on the verdict or if a judgment should be entered for defendants, notwithstanding the verdict. The original judgment was not the result of his determination. Neither was it the result of the exercise of any judicial discretion on the part of the judge who signed it. It was rather the result of a practice which was being followed at that time; it was inadvertently entered; it was entered without authority. It was no judgment, because it was not made and authenticated by the judge who

alone had authority to enter judgments in this case. It was void and without effect upon subsequent proceedings by the trial judge.

The second judgment was entered by Judge Marschner, but was done under authority from Judge Webster, who filed an opinion in which he ordered and directed that a judgment·notwithstanding the verdict be entered for the defendants. We think that the judgment *non obstante veredicto* was authorized and is the only judgment of the court in this case.

The original judgment was vacated by an order of the circuit judge made on the 28th of January, 1922, after the case was in this court. In our view, as to the character and effect of that judgment, it becomes unnecessary to discuss the question of the authority of the circuit judge to make his order vacating it.

The judgment is affirmed.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.