Argued October 13; affirmed November 15, 1932

# FITZGERALD *v.* OREGON-WASHINGTON R. & NAV. CO.

(16 P. (2d) 27)

[1]

· *L. W. Hobbs,* of Portland (A. C. Spencer and Roy F. Shields, both of Portland, on the brief), for appellant.

*Arthur I. Moulton,* of Portland (Lord & Moulton, of Portland, on the brief), for respondent.

KELLY, J. In arguing that defendant's motion for nonsuit and for a directed verdict should have been sustained, defendant asserts that neither the pleadings nor the evidence brings this case within the provisions of the Oregon Employers' Liability Act (Sections 49-1701 to 49-1707, inclusive, Oregon Code 1930).

Among other things, such act prescribes that certain duties are to be observed by employers engaged in the operation of machinery. It is alleged in the amended complaint that at all times mentioned therein defendant was engaged in business as a common carrier of passengers and freight for hire by railroad, and "that defendant maintains in the city of Portland, Multnomah county, Oregon, a railroad yard where defendant makes up its freight trains, and distributes cars, and plaintiff was employed by defendant as a seal clerk in the aforementioned yard."

These allegations set forth in unmistakable language that defendant was engaged in the operation of machinery, namely, freight trains and cars, and that, around and upon such machinery, plaintiff was employed as seal clerk. The duties of plaintiff's em-

ployment as seal clerk must have been as well known to defendant as to plaintiff himself. Bearing in mind that defendant was thus apprised of plaintiff's duties, the allegation, that such duties were performed in defendant's railroad yard, tenders an issue upon which it was proper to submit to the jury whether plaintiff's work involved risk and danger.

The amended complaint alleges:

"That during all the times herein mentioned defendant was engaged in the industry, trade and business of a common carrier of passengers and freight for hire, and it carried on its said industry, trade and business among other places, in a two-story building in the county of Multnomah, State of Oregon, wherein its records and files were kept, and its employees were required to work indoors, and certain of its employees, part of whose work was outdoors, were required to work part of their time indoors, and wherein persons by it directly employed for gain and profit were required to be in the course of their employment, and the said place of employment was not a place where persons were employed in private domestic service or agricultural pursuits, and defendant was the owner of said premises and/or had control and custody of said place of employment during all the times herein mentioned, and plaintiff was an employee of defendant on or about the 10th day of February, 1931, and was in the course of his employment required to perform certain portions of his work in and about the said place of employment, and to enter the same and pass through the passage ways thereof. Defendant maintained certain lockers on the second floor of said building, wherein was stored certain of defendant's property and certain of the personal effects of defendant's employees, including plaintiff, and during all of the times herein mentioned defendant had constructed said place of employment with a passage way about four feet in width and with a stairway consisting of several flights of stairs ascending to and connecting

with said passage way, and defendant, by its rules, regulations and orders in effect at said time, required its employees, including plaintiff, to go to and come from said lockers, by means of said stairway and passage way, and defendant's work was carried on at the time aforesaid during the night time, and at times when it was dark and no natural light entered said premises.

"That on or about the said 10th day of February, 1931, defendant carelessly and negligently failed and neglected to have the said passage way and stairway properly and sufficiently lighted during working hours, and carelessly and negligently failed and neglected to keep a proper and adequate light burning in the hallways near said stairs from the time said building was open until it was closed, and carelessly and negligently failed to furnish and supply said premises with switching and controlling devices and apparatus so that any lights could be turned on therein at the main points of entrance to said building and defendant carelessly and negligently ordered and directed its employees in and about said premises to keep the lights it did supply in connection therewith turned off except when in actual use, and to turn the same on only when actually in said premises, and defendant further carelessly and negligently furnished as the sole means of lighting the said passage way and stairway a certain electric light situated at a point immediately over the top of said stairway at the point where the same joined said passage way and carelessly and negligently furnished as the only means of turning on said light a certain pull cord or chain, so situated that defendant's employees, including plaintiff, when turning on said light, were required to go in the darkness to a point at the top of said stairway and reach upward and find said chain or cord, in the darkness, while standing at a point immediately at the top of said stairway, and there was great and imminent danger by reason thereof, that employees while searching for said light in the darkness, would be unable to locate the

top of said stairway and would step off the same in the darkness, or lose their balance at the edge thereof, and fall down said stairway and be injured, all of which defendant then and there well knew.

"That on or about the said 10th day of February, 1931, in the course of his said employment and as he was required to do by defendant, plaintiff was passing through said passage way at about the hour of 10:45 P. M., and by reason of the negligence of defendant aforesaid, said passage way was in darkness, and plaintiff could not see the location of the head of said stairway, and was obliged, as he was required to do by defendant, to reach for said chain or cord in the darkness, and plaintiff thereupon did attempt to turn on said light, in conformity with the orders, customs and practices of defendant, and while reaching therefor, wholly by reason of the negligence of defendant as aforesaid, failed to see the exact location of the top of said stairway, stepped off the top step thereof in the darkness, and lost his balance, and fell and rolled down said stairway a distance of about fourteen feet, with great force and violence, and plaintiff was thereby bruised and contused about the body and limbs," etc.

While the foregoing allegation contains the statements that defendant "failed to furnish and supply said premises with switching and controlling devices and apparatus so that any light could be turned on therein at the main points of entrance to said building," it also embraces distinct allegations of negligence in other respects. A violation of the lighting statute (section 49-1201 to section 49-1209, Oregon Code 1930) is alleged, in the language of that statute.

Plaintiff testified in effect that among his duties as seal clerk he had to check the trains, take the initials and numbers, numbers of the seals; to make a consist of the trains, a consist being a statement of the relative location of the respective cars in the train;

to inspect refrigerator cars and open and close the vents therein as required, in doing which, manual labor upon such cars was required, and to O. K. vent lists and return same to the listing clerk. Plaintiff wrote up his consists in an office on the ground floor of the building wherein he was injured. He also testified that he was assigned a locker on the second floor in which to keep his working clothes, and that pursuant to an order to keep the seals under lock and key he also kept his seals there when not using them; that about 10:45 of February 10, 1931, plaintiff went to said locker for the purpose of depositing his seals and leaving his hat and coat therein, which he did, and then started down the stairway which was unlighted. In an effort to light the stairway, when he attempted to pull the chain attached to the switch upon a light bulb suspended above the head of said stairway, he fell down the stairs and was injured.

The last train which he had checked before he was hurt was regularly called at 9:30 p. m. and usually got out an hour later; that after checking this train, plaintiff went first into the yard office, got his forms, checked his train back and made out his consists. He then went to the locker as stated.

Plaintiff also testified that upon his return from the locker he intended to do whatever the yardmaster had for him to do. He said that usually the yardmaster had some wires concerning delayed cars to look up, and that he would look them up and post the car records; that he thought there would not be another train for him to check that night, otherwise, he would not have deposited his seals in the locker.

■ It is not necessary for an employee to be actively engaged in his work in order to be within the protection of the statute: *Grow v. Oregon Short Line R. Co.*,

44 Utah 160 (138 P. 398, Ann. Cas. 1915B, 481) ; *Louisville & N. R. Co. v. Walker,* 162 Ky. 209 (172 S. W. 517) ; *St. Louis Southwestern Ry. Co. v. Brothers,* 165 S. W. 488; *Pelton v. Ill. Cent. Ry. Co.,* 171 Iowa 91 (150 N. W. 236) ; *Missouri K. & T. Ry. Co. v. Rentz,* 162 S. W. 959; *Philadelphia B. & W. R. Co. v. Tucker,* 35 App. D. C. 123, (L. R. A. 1915C, 39) ; *Lamphere v. Oregon Ry. & Nav. Co.,* 116 C. C. A. 156 (196 Fed. 336, 47 L. R. A. (N. S.) 1) ; *Brock v. Chicago R. I. & P. Ry. Co.,* 305 Mo. 502 (266 S. W. 691, 36 A. L. R. 891, 907) ; 39 C. J. 280, section 405; *Ingram's Admx. v. Rutland R. Co.,* 89 Vt. 278 (95 Atl. 544, Ann. Cas. 1918A, 1191) ; *Elliott v. Payne,* 293 Mo. 581 (239 S. W. 851, 23 A. L. R. 706).

■ Defendant urges that, while plaintiff was engaged in writing the consists and making notations on the vent lists in the office, he was not engaged in work involving risk and danger, and hence, at such time, the provisions of the Employers' Liability Act were not applicable to him. The jury would have been justified in finding, and doubtless they did find, that the clerical work just mentioned was merely incidental to the work which plaintiff was required to do upon and about defendant's trains.

■ To ascertain whether the statute applies to an employee in a given case, the character of service is determined by the contract of employment.

"The scope of a servant's duties in relation to the rule illustrated by the cases cited in the last section is defined by what he was employed to perform, and by what, with the knowledge and approval of his employer, he actually did perform rather than by the mere verbal designation of his position." 4 Labatt's Master & Servant, (2d Ed.) Section 1566, cited and quoted in Walters et al. v. Dock Commission, 126 Or. 487, 496 (245 P. 1117, 266 P. 634, 270 P. 778).

The question is not necessarily what was the employee doing at the very moment he was injured, but what did the terms of his contract of employment contemplate he would do when so directed. To take any other view is to hold contrary to the doctrine of the authorities above cited. They announce the rule that there are times when the employee, although not actually at work at all, is under the statute if the contract of his employment contemplates that when he does actually work he will be subject to the hazards set out in the statute.

Defendant objects to this rule because different employees of defendant using the stairway in question, if injuried on account of its unlighted state, would not be subject to the same defenses, notably, the defense of contributory negligence as a complete defense. The rule, however, is no more discriminatory than the rule that a trespasser is entitled to no redress for tortious injury, unless the same was willful, while a passenger for hire is entitled to the highest degree of care.

Defendant calls our attention to the following cases: *O'Neill v. Odd Fellows Home,* 89 Or. 382, 389, 390 (174 P. 148); *Ridley v. Portland Taxicab Co.,* 90 Or. 529, 537 (177 P. 429); *Hoffman v. Broadway Hazelwood,* 139 Or. 519 (10 P. (2d) 349, 11 P. (2d) 814).

The first of these cases discloses that the plaintiff was engaged as a laundress, and the duty alleged in her complaint was that she was required to hang washings upon lines fastened upon a porch, and that the business in which defendant was engaged was that of conducting a home for old men and women and orphan children.

The second case is that of a plaintiff who was an experienced chauffeur and had been employed as an extra driver by defendant, a corporation engaged in the taxicab business. That case was argued October 15, 1918, which is fourteen years and two days before the case at bar was argued.

The third case is one wherein the plaintiff was an employee in the bakery department of defendant's restaurant and confectionery business. It was her business to bake biscuits, graham gems and potatoes. Food prepared in a room where she alone worked was taken to the kitchen and placed in ovens. In going from the room where the food was prepared, it was necessary every few minutes for her to go along an aisle or way about five feet wide near the place where others worked in washing dishes, pots and various kinds of cooking utensils.

Whatever may be said on account of the change in traffic conditions, which has occurred in the past fourteen years with reference to the hazard of a taxicab driver's employment, there is still a distinct difference in that respect between the work of such a driver and that of a seal clerk who works in a railroad yard upon refrigerator cars where trains are made up and cars distributed.

Certainly the duties of a laundress at an old folks home and of a cook in the kitchen of a restaurant are not even remotely similar to those of the plaintiff in the case at bar as far as the matter of working about machinery is concerned or the risk and danger attendant upon such employment.

■ In the instant case, in order to warrant a recovery by reason of the provisions of the Employers' Liability Act, it is necessary not only that it be shown that de-

fendant was engaged in the kind of work embraced within the terms of that statute, that the plaintiff was defendant's employee acting within the scope of his employment and that the terms of his employment contemplated the performance by plaintiff of work involving risk and danger; but also that the proximate cause of plaintiff's injury was one included within the terms of the statute.

The statute expressly mentions:

"Any defect in the structure, materials, works, plant or machinery of which the employer or his agent could have had knowledge by the exercise of ordinary care; the neglect of any person engaged as superintendent, manager, foreman, or other person in charge or control of the works, plant, machinery or appliances; the incompetence or negligence of any person in charge of, or directing the particular work in which the employee was engaged at the time of the injury or death; the incompetence or negligence of any person to whose orders the employee was bound to conform and did conform and by reason of his having conformed thereto the injury or death resulted; the act of any fellow-servant done in obedience to the rules, instructions or orders given by the employer or any other person who has authority to direct the doing of said acts."

And it expressly abrogates the defense of negligence of a fellow-servant in all actions brought to recover from an employer for injuries suffered by an employee when the injury was caused or contributed to by any of the said causes: Section 49-1705, Oregon Code 1930.

The New York Court of Appeals speaking through Mr. Justice Chase, in a case wherein the defendant had failed to furnish plaintiff with a punch for plaintiff's use in punching holes in steel hoops by means of

which tops of barrels were fastened, quoted Lindley, L. J., in *Yarmouth v. France,* L. R. 19 Q. B. D. (Eng.) 614:

"I take defect to include anything which renders the plant, etc., unfit for the use for which it is intended, when used in a reasonable way and with reasonable care."

The language of the New York court on that point is even more illuminating:

"A plant is defective when any part of it is not in a proper condition for the purpose for which it was intended and it is also defective when it is so incomplete that the use of the plant is dangerous by reason of the failure to furnish reasonably necessary parts for the purpose for which it is used. * * * We think the record disclosed a question of fact as to whether the defendant's plant was defective by reason of its failure to supply the plaintiff with a punch", etc. Wiley v. Solvay Process Company, 215 N. Y. 584 (109 N. E. 606, Ann. Cas. 1917A, 314).

■ The word "works," as used in the statute, means an entire plant—all the real estate, buildings and machinery used in the particular business: *Kern v. Welz & Zerweck,* 151 App. Div. 432 (136 N. Y. S. 412), cited in the A. L. R. annotation to *Elliott v. Payne,* supra.

■ As to the proximate cause in the instant case, the jury would have been warranted in finding that the defendant had not exercised ordinary care in reference to providing the means to light the stairway in question. *Wulff v. Bossler,* 199 Mich. 70 (165 N. W. 1048). In the case just cited Mr. Justice Steere, speaking for the court, says:

"That it was the duty of the master to furnish the servant a reasonably safe place in which to work, ac-

cording to the location and nature of the employment, is settled law. It was defendant's duty to keep this flight of steps in good condition for the easy and safe passage of his employees going up and down. Ferris v. Hernsheim, 51 La. Ann. 178 (24 So. 771)."

"Usually the negligence of the employer is a question for the jury, where the evidence tends to show that the place where the injury was received was inadequately lighted. Labbatt on Master & Servant (2d Ed.) Section 1005."

See also *Eaton v. Wallace,* 287 S. W. 614, 48 A. L. R. 1291. The height of the electric bulb above the head of the stairway in view of the length of the chain, or rather its shortness, may have been held to be a defect of which the employer could have had knowledge by the exercise of ordinary care.

Our lighting statute expressly provides:

"All passageways and other portions of places of employment * * * shall be kept properly and sufficiently lighted during working hours," and that "the halls and stairs leading to the workrooms shall be properly and adequately lighted." Section 49-1202, Oregon Code 1930.

■ A violation of a statutory mandate for the safety of workmen constitutes negligence without regard to the applicability or nonapplicability of the penal clause of such statute. The late Mr. Justice ROBERT S. BEAN enunciated this principle more than two decades ago in construing the factory act which provided a penalty for a failure on the part of an employer to safeguard machinery after being notified so to do by the commission. We quote the language of this distinguished jurist:

"It is also contended that the written notice given by the deputy labor commissioner to defendant was not

sufficient in form, because it does not state the manner in which the saw was to be covered or safeguarded, but, if this was a fatal defect in the notice, it does not relieve defendant from complying with the statute. His duty was to safeguard his machinery when it could be done with due regard to its use, whether notified to do so by the labor commissioner or not. The commissioner is required to inspect the mills and factories enumerated in the act, to see that the law is being complied with, and his certificate is made prima facie evidence of a compliance therewith, but, if he should fail to do his duty, it would not relieve the person, firm, corporation or association, operating a factory, mill or workshop, where machinery is used, from complying with the statute or from answering in damages to an employee who was injured on account of a failure to do so." Hill v. Saugested, 53 Or. 178, 190 (98 P. 524, 22 L. R. A. (N. S.) 634).

■ Therefore, the jury would have been warranted in finding that the unlighted condition of the stairway resulted from the neglect of the superintendent, manager, foreman, or other person, in charge of the works.

■ In the record there is evidence tending to prove that an order of the company was posted requiring employees using the stairway to extinguish the light when their use thereof was at an end; hence, the jury would have been justified in finding that the unlighted condition of the stairway was due to the act of a fellow-servant done in obedience to the rules, instructions and orders given by the employer, or by some person who had authority to direct the doing of said act.

■ Finally, it is urged that plaintiff's injury was caused solely by plaintiff's own negligence in failing to use the lantern provided for his use by the company; however, the jury would have been warranted in finding, and doubtless did find, that defendant was negli-

gent in a way constituting the proximate cause of the accident; that plaintiff himself was also negligent and that the combined negligence of plaintiff and defendant caused the injury. This is only another way of saying that defendant was contributorily negligent. Under the Employers' Liability Act, in cases between employer and employee (*Malloy v. Marshall-Wells Hardware Co.*, 90 Or. 303, 355 (173 P. 267, 175 P. 659, 176 P. 589)) contributory negligence may be taken into account by the jury in fixing the amount of the damage, but it is not a defense: Section 49-1706, Oregon Code 1930.

██ Plaintiff had had prior ailments. He had been notified to appear on the day following his accident to answer a charge of violating Rule G of the company. Immediately after the fall, plaintiff said that he slipped upon something. Shortly, thereafter, plaintiff returned to the stairway and found some orange peeling there which he brought to the office and it is claimed by one of the witnesses for defendant that plaintiff then said that he had slipped on said orange peeling, but did not refer to the darkness of the stairway as a cause of his fall, and the doctors differed as to whether he really had sustained the alleged, or any actual, injury as a result of his fall. Defendant suggests that these circumstances, coupled with the fact that his fall occurred when no one else was present, indicate that plaintiff's case is based only upon feigning and pretense. The jury, having the advantage of seeing the witnesses and observing their manner on the stand, passed upon this as well as the other phases of the case, and we cannot disturb its finding.

The instructions to the jury by the learned trial judge are thirty-three pages in extent. They reflect

commendable care and precision. Assuming, as of course we must, that upon dissolution all judges are translated to realms celestial, the writer thinks that an extra string should be added to the harp or at least one degree greater brilliancy be given to the halo of a trial judge for such painstaking preparation of instructions—always provided, of course, that the occasion rendering opportune such reward should be long, very long, yes, very very long deferred.

The judgment of the circuit court is affirmed.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.