## LEONARD *v.* STATE HIGHWAY DEPARTMENT.

1. CONTRACTS—FRAUD—SUBSEQUENT CONTRACT.
Plaintiff's theory, in action to recover for additional labor and materials, that defendant highway department misrepresented the condition of the bridge structures plaintiff was to clean and paint *held*, not applicable, as the alleged "wrong" was extinguished by the subsequent contract which clearly recognized the rusted condition of the bridge surfaces and stated that the change in cleaning methods was to be at "no change in cost."

2. SAME—MISTAKE—SUBSEQUENT CONTRACT.
Plaintiff's allegation in suit against State highway department to recover for additional labor and materials that parties were mistaken as to condition of bridges plaintiff was to clean and paint *held*, without merit, since whatever "mistake" may have existed under the original contract was waived by a subsequent agreement between the parties, which contained no express reservation of any claim plaintiff may have had.

Appeal from Court of Claims; Beers (Henry L.), J., presiding. Submitted Division 2 October 6, 1966,

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 17 Am Jur 2d, Contracts § 143 *et seq.*

at Lansing. (Docket No. 945.) Decided February 14, 1967.

Complaint by H. George Leonard, doing business as H. George Leonard & Sons, against the State Highway Department to recover for additional labor and materials expended by plaintiff in cleaning and painting bridges under contract with defendant. Defendant's motion for accelerated judgment was granted. Plaintiff appeals. Affirmed.

*Verdonk, Verdonk & McKay (Donald J. McKay, of counsel), for plaintiff.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Burton P. Daugherty, Jr.,* Assistant Attorneys General, for defendant.

N. J. KAUFMAN, J. On June 25, 1963 plaintiff, H. George Leonard, doing business as H. George Leonard & Sons, entered into a contract with defendant State highway department to do cleaning and painting work on bridge structures.

It appears that the plaintiff went ahead with the work and discovered the situation complained of, *i.e.,* the existence of large areas of rust underlying apparently sound paint on the bridge surface, which prevented adequate cleaning by the steam-cleaning method called for in the original contract. It further appears that upon discovery of this situation, the plaintiff entered into an agreement with the highway department, which is designated as exhibit B and which states that the cleaning method provided for was unsatisfactory, and that the contractor agreed to wire brush and remove all loose adhering particles and all rust or scale which could be removed by abrasive cleaning. This was to be done at no extra

charge; the agreement was signed by the plaintiff. It does appear, however, that upon negotiations being had after the discovery of this condition, the highway department did allow to the plaintiff an additional $6,120 as payment for "extras," these "extras" being the abrasive cleaning, et cetera, as above mentioned.

Work under this contract was completed and accepted on June 12, 1964. A complaint was filed by plaintiff on October 5, 1964, in the court of claims for the recovery of additional labor and materials expended.

Defendants' motion for accelerated judgment was granted by the court of claims, based upon 2 recited reasons: first, plaintiff's claim actually sounds in tort and was not for breach of contract; and second, the court of claims has no power to rectify a mistake as claimed by the plaintiff, if there were such a mistake.

In its opinion, the court of claims indicated plaintiff's action sounds in tort. This conclusion is questionable in light of *Hersey Gravel Co.* v. *State Highway Department* (1943), 305 Mich 333 (173 ALR 302), and *W. H. Knapp Co.* v. *State Highway Department* (1945), 311 Mich 186.

The condition of the bridges may have been misrepresented or the plaintiff may have been misled by the representations of the highway department. However, this matter need not be decided since subsequent acts by the plaintiff render such a consideration unnecessary.

While *Hersey Gravel Co.* v. *State Highway Department, supra,* and *W. H. Knapp Co.* v. *State Highway Department, supra,* might ordinarily be controlling in circumstances where adequate inspection was not possible, the circumstances in the instant case do not indicate the applicability of the

*Hersey Case.* See *Harrison Granite Co.* v. *Stephens* (1910), 160 Mich 51.

In the instant case, plaintiff signed a contract which stated:

"The undersigned has examined the plans, specifications and the location of the work described herein and is fully informed as to the nature of the work and the conditions relating to its performance and understands that the quantities shown are approximate only and are subject to either increase or decrease."

The contract further provided:

"The undersigned further proposes to do such extra work as may be authorized by the commissioner, prices for which are not included in the itemized bid. *Compensation shall be made on the basis agreed upon before such extra work is begun.*" (Emphasis supplied.)

The plaintiff herein, after starting performance under the original contract, learned the true condition of the rust-permeated bridge structures, asked for and received additional time to clean the structures. The plaintiff and defendant highway department then entered into a subsequent contract which provided as follows:

"At no change in cost it is recommended to alter the methods of water cleaning, specified in contract proposal under 'cleaning of surfaces' as follows: (1) Eliminate all steam cleaning. (2) Hot water method to be used in machine rooms only.

"The steam cleaning method applied under actual field conditions produced unsatisfactory results. No apparent change in removing foreign matter occurred after steam cleaning, thereby indicating method was not practicable or applicable to this type of work.

"Contractor will wire brush and remove all loose adhering particles. All rust or scale will be completely removed by abrasive cleaning before spot painting.

"Contractor will be required to comply with all requirements of 'abrasive cleaning' as specified in the contract proposal.

"No change in cost."

On the supposition that plaintiff's theory of fraud is applicable in the instant case, the alleged "wrong" was extinguished by the subsequent contract which clearly recognized the rusted condition of the bridge surface and stated the change in cleaning methods was to be at "no change in cost."

Plaintiff also alleges a mistake was made by the parties as to the true nature of the bridge structure. Whatever "mistake" may have existed under the original contract was waived by the subsequent agreement. *Zounes* v. *Dassios* (1926), 233 Mich 651. See, also, *Sharon* v. *Spalding School District* (1963), 370 Mich 346. The reason for the waiver under such circumstances lies in the fact that with a full knowledge of the "fraud" and without reserving their right of action, the plaintiff entered into a new contract which abrogated and superseded the one out of which their claim to damages arose. There was no express reservation of any claim to damages arising out of alleged misrepresentations or mutual mistake in the second contract. *Kintz* v. *Galvin* (1922), 219 Mich 48, 51.

Affirmed.

QUINN, P. J., and McGREGOR, J., concurred.