MILLER v. BICK.

CONVERSION—USER OF MORTGAGED MACHINERY WITH MORTGAGOR'S
CONSENT NOT LIABLE TO MORTGAGEE IN ABSENCE OF DEMAND FOR
POSSESSION AND REFUSAL.

One who used mortgaged machinery with the consent of
the mortgagor is not liable to the mortgagee on the theory
of unlawful conversion, in the absence of a showing that
after default in payment of the mortgage demand for
possession was made and refused, although the machinery
was never paid for, and by reason of its use much of it
became worthless.

Error to Midland; Hart (Ray), J. Submitted
January 5, 1927. (Docket No. 11.) Decided December 1, 1927.

Case by Leo J. Miller against J. N. Bick for the
conversion of certain machinery. Judgment for plaintiff. Defendant brings error. Reversed.

*William C. Manchester* and *Gilbert A. Currie,* for
appellant.

*Thomas, Shields & Silsbee* and *Clayton F. Jennings,*
for appellee.

SHARPE, C. J. In May, 1923, defendant, a resident
of Toledo, Ohio, entered into a contract with the
Wolverine Power Company to construct a dam for it
on the Tittabawassee river at Edenville, in Gladwin
county. On July 2, 1923, he entered into separate
written agreements with Mann & Stewart and Jesse
L. Trapp to make the fills required in the construction
of the dam. These contracts provided that if these
subcontractors abandoned the work, or failed to prose-

Chattel Mortgages, 11 C. J. § 287.

cute it with diligence, or lost control thereof, the plaintiff might take possession of the work and "all tools, machinery, teams, implements, and materials on the site thereof, or such part thereof as the first party may require," and complete the work and charge the cost thereof to the subcontractors.

In anticipation of these contracts, the subcontractors had, on June 18, 1923, purchased from the plaintiff, an automobile dealer at New Haven, Indiana, several Fordson tractors and trailers, and they were shipped to and received by them and used in the work. To secure payment, the purchasers executed notes, purporting to retain the title in plaintiff, and also chattel mortgages on the property purchased. No down payment was made. These mortgages were not filed in the township in which the property was located, but, on July 14, 1923, were filed with the register of deeds of Midland county. It is plaintiff's claim that defendant was informed in September, 1923, that the equipment had not been paid for.

The subcontractors began work in July. They failed to meet their payrolls and other obligations, and sought financial assistance from the defendant. He sent his attorney to Edenville on October 20th, and after a conference, in which it appears that plaintiff's representative, Mr. Stevenson, was present a part of the time, an agreement was prepared and executed by the subcontractors and annexed to the contracts of July 2d and filed with the township clerk of the township wherein the equipment was then situate, in which it was provided that the subcontractors—

"in order to secure the performance of their part of said contract hereby give and grant to said J. N. Bick the use and possession and control of all tools, machinery, steam shovels, tractors, trailers, wheelers, scrapers, teams, implements, wagons, dump cars, rails, and other equipment of every name and kind that are

240—Mich.—39.

now or may be hereafter on the site of the work contemplated in said contract,"

and, as further security for the performance of said contract, did convey to plaintiff all their right, title, and interest in the equipment they then had, including that purchased from plaintiff; such conveyance to be void on the due performance of the contract by them.

The work then progressed. There is dispute as to whether the subcontractors had charge thereof or were thereafter in the employ of defendant. Representatives of the plaintiff frequently visited the work, and were insistent on payment of the amount due on their indebtedness, but nothing was paid thereon. It is plaintiff's claim that, at the conference held on October 20th, when the supplementary agreements were executed, defendant's attorney told Mr. Stevenson—

"to file a list of our accounts, the ones past due and the ones coming due with Mr. Bossard and they would be taken up at the meeting and would be taken care of."

Bossard was defendant's representative on the work. Stevenson testified that he later in that day saw Bossard, who told him to "rest easy, that we would get our money." It does not appear that any list of notes due was at any time delivered to Bossard. No payment whatever has been made on the notes held by plaintiff.

In January, 1924, plaintiff saw defendant in Toledo, and requested permission to remove the equipment. Defendant told him to "Go on up and get it. Everything will be *pro rata*, and you will get your money." A considerable part of the equipment was retaken by plaintiff in February, 1924. It is his claim that his representative sold a part of it to Bossard for defendant for $800, which has not been paid. This is denied by Bossard. The remainder of the equipment except

some parts said to be worthless, were taken possession of by plaintiff about July 1, 1924.

On July 30, 1924, plaintiff invoiced defendant for the equipment claimed to have been sold to him for $800, and thereafter began this action to recover that amount. Pursuant to a stipulation, the declaration before trial was amended to make claim for an unlawful conversion by defendant of the equipment, or a part thereof. The trial judge submitted both claims to the jury, instructing them, however, that, in order to allow the claim for conversion, they must find that the defendant wrongfully exercised acts of dominion over the property in "exclusion of, or in defiance of, or inconsistent with, Mr. Miller's rights in the property." The jury found for the plaintiff in the sum of $9,570.55. Defendant reviews the judgment entered thereon by writ of error.

The error principally relied on is the denial of defendant's motion to withdraw the claim of conversion from the consideration of the jury. We are impressed that this motion should have been granted. We have read the record with care, and find no proof on which such liability can be predicated. The mortgages were in the usual form. Conceding that defendant had notice of plaintiff's rights thereunder, such rights were only those of a mortgagee. The interest of the mortgagors in the property which was transferred to defendant as security was, of course, subject to the rights of the plaintiff under his mortgages. When payments were in default, plaintiff might have taken possession of the property and sold it, pursuant to the provisions of the mortgage. Had he made demand, and had possession been refused, he might have brought replevin or an action for conversion. But such demand as was made was not met with a refusal.

Stress is laid upon the manner in which the equipment was used, and the fact that a part of it was

worthless at the time plaintiff sought possession. While perhaps an action would lie for its wanton destruction by defendant, it does not appear that it was used other than as an owner would have a right to use it in the furtherance of his work. In our opinion the claim of liability for conversion should not have been submitted to the jury. In view of the conclusion reached, the other questions discussed do not seem to merit consideration. The verdict is not informative as to whether the $800 claim was allowed.

The judgment is reversed, with costs to defendant, and a new trial granted.

FELLOWS, CLARK, and McDONALD, JJ., concurred. WIEST, J., concurred in the result. BIRD, J., did not sit.

The late Justice SNOW and Justice STEERE took no part in this decision.