RARIDAN *v.* BICK.

1. CONTRACTS—CONSIDERATION.

Contractor's oral promise to pay subcontractors' chattel mortgage indebtedness on machinery purchased, if made, was naked promise, where there was no evidence that seller agreed to forbear retaking machinery so as to constitute independent consideration.

2. FRAUDS, STATUTE OF—PROMISE TO PAY DEBT OF ANOTHER—ORAL CONTRACT—CONSIDERATION.

Contractor's alleged oral promise to pay subcontractors' chattel mortgage indebtedness on machinery purchased, being without independent consideration, was void under statute of frauds.

3. ATTORNEY AND CLIENT—AUTHORITY OF ATTORNEY TO PROMISE TO PAY DEBT OF ANOTHER.

Contractor's general instructions to attorney to investigate subcontractors' troubles, and "fix it up, whatever it is," *held*, insufficient to authorize attorney to make promise to pay their chattel mortgage indebtedness on machinery purchased.

4. SAME—ATTORNEY NOT CLIENT'S BUSINESS AGENT.

Attorney is not client's business agent, and cannot bind client in financial matters without express authority.

5. COURTS—POWER TO CORRECT RECORDS—COURT RULES.

Appellate rules do not impair power of trial court to correct its records to set out truly its proceedings (Court Rule No. 56).

6. SAME—VACATING JUDGMENT INADVERTENTLY ENTERED—TRIAL.

Trial court has authority to vacate judgment inadvertently and prematurely entered on verdict, where decision had been reserved under statute (3 Comp. Laws 1929, § 14531 *et seq.*), since effect was to correct records to show that no judgment had been entered.

7. APPEAL AND ERROR—WHERE JUDGMENT VACATED APPEAL THEREFROM FALLS.

Notice of appeal from judgment inadvertently and prematurely entered on verdict, where decision had been reserved, fell with trial court's vacation of said judgment, and therefore court had jurisdiction to hear motion for judgment *non obstante veredicto*, and enter second judgment.

On power of trial court to correct its record after an appeal or writ of error, see annotation in 31 L. R. A. (N. S.) 207.

Appeal from Midland; Hart (Ray), J. Submitted April 26, 1932. (Docket No. 138, Calendar No. 36,421.) Decided June 6, 1932.

Assumpsit by Lake E. Raridan, trustee in bankruptcy of Leo J. Miller, bankrupt, against J. N. Bick on an alleged contract for machinery. Judgment *non obstante veredicto* for defendant. Plaintiff appeals. Affirmed.

*Shields, Silsbee, Ballard & Jennings* (*Harris E. Thomas,* of counsel), for plaintiff.

*Manchester, Zirkalose & Smith* (*C. F. Gates,* of counsel), for defendant.

FEAD, J. In *Miller* v. *Bick,* 240 Mich. 608, is a statement of the facts of this case, only a few of which need to be repeated.

In 1923, defendant had a contract to construct a dam. Two of his subcontractors purchased some tractors and trailers from plaintiff Miller under instruments which, in form, were title-retaining contracts, but in law passed title with chattel mortgages back to plaintiff. In the fall, the subcontractors had financial troubles and were unable to pay their material and labor bills. Plaintiff, diligently but unsuccessfully, had sought payment of his claims, and in October sent J. M. Stephenson to obtain money or take the machinery.

Defendant, learning that the subcontractors were not paying their bills, sent his attorney, William Manchester, to investigate and "fix it up, whatever it is." Manchester and defendant's superintendent at the dam, Henry Bossard, determined to take control of the subcontractor's work and complete it, using their machinery, as defendant could do under

the contracts, and account for the contract price less cost. They so arranged with the subcontractors.

On October 20th, Stephenson, Manchester, and Bossard had a conversation, of about five minutes, which is the basis of plaintiff's claim in suit. Stephenson's version of the conversation, including additions from his thrice telling, was:

"I went up, and Mr. Bossard I had met before and talked to him, and Mr. Bossard when I went in asked me what my troubles was and I told him I was up on a little matter of collection of notes that were past due and the banks were objecting and had to have the money and it would have to be taken care of or we would have to repossess the stuff and pay them off. Mr. Manchester spoke up and he says, 'Do you want that equipment out there or the money?' I said, 'We want the money.' Mr. Manchester said, 'Go ahead and file a list with Mr. Bossard and there will be a meeting within the next 10 days or so and it will be taken care of.' (That is, get our money.) I gave him a list of the ones past due. I went back and made out a list and mailed to Mr. Bossard, and made another trip and asked Mr. Bossard if he had received the list and he said he did."

Defendant's claim, in effect, is that Manchester told Stephenson he could take the machinery, and, if he filed a list with Bossard, plaintiff would share *pro rata* in the final returns of the subcontracts.

Plaintiff's contention is that the quoted conversation created a contract by defendant, through his authorized agent, to pay plaintiff the amount of the subcontractors' notes given for the equipment; and that it was not within the statute of frauds, as an oral promise to pay the debt of another, because it rested upon the independent consideration, running

directly from plaintiff to defendant and for the latter's benefit, that the machinery be left on the job for defendant's use in working out the subcontracts.

There was no present consideration for the alleged promise, as the testimony fails to show an agreement of forbearance by plaintiff. Nor was Manchester's promise conditioned, in terms, on plaintiff's forbearance to take the machinery so that his neglect to take it would constitute an acceptance of the promise and complete a contract by furnishing the independent consideration. From the words used, the promise was naked.

The practical construction given the conversation by the subsequent conduct of the parties lends no aid to plaintiff's claim. There was no evidence that Stephenson communicated to plaintiff, or that the latter recognized that he and Manchester had made a contract to leave the equipment either temporarily or permanently. The machinery remained on the job until February or March, when plaintiff took possession of all that would operate, but no one testified that it was left there in pursuance of a promise or agreement to forbear. In November, December, and January, Stephenson and Bossard had correspondence and conversations, as did plaintiff and defendant. At the first opportunity, defendant denied liability for the subcontractors' debts. In neither conversation nor correspondence did plaintiff or Stephenson claim that defendant or Manchester had promised to pay the debts, nor did either recognize an obligation to leave the machinery on the job for defendant's use. In the summer of 1924, plaintiff claimed defendant owed him $800 for the broken-down machinery which he did not remove. Plaintiff sued the subcontractors for the debts. At the first trial of this suit plaintiff

claimed defendant had converted the machinery to his own use on October 20th. Under the facts, that claim was a denial of an agreement by him that defendant could use the machinery.

There being no direct promise to forbear, no showing that such forbearance as occurred was in pursuance of agreement, and no recognition by plaintiff of obligation to forbear, plaintiff wholly failed to prove that an independent consideration ran to defendant for the promise. It was void under the statute of frauds.

We also agree with the circuit court that Manchester's authority to make a promise to pay the mortgage debts was not shown. Such authority was denied by both defendant and Manchester. Plaintiff's case in this respect rests upon defendant's general instruction to Manchester to investigate the subcontractors' troubles and "fix it up, whatever it is." This general instruction must be considered in connection with the functions of an attorney-at-law and may be fairly construed only to authorize him to take such legal measures as he may determine advisable. An attorney is not a business agent of his client and cannot bind his client in financial matters without express authority therefor. See 6 C. J. p. 656 *et seq.*

Counsel further present a rather involved situation as to the practice. On the trial, defendant made motion for directed verdict and decision was reserved under the statute (3 Comp. Laws 1929, § 14531 *et seq.*). By stipulation of counsel and order of court 20 days were allowed defendant to present a motion *non obstante* or for new trial. Immediately after verdict, however, judgment was entered for plaintiff. Within the 20-day period, defendant filed preliminary notice of appeal, evidently

to save his rights, and also filed motion for judgment *non obstante* and motion for new trial. Plaintiff objected to hearing the motions on the ground that, by the notice of appeal, under Court Rule No. 56, the case was transferred to the Supreme Court and the circuit court had lost jurisdiction of it. The court granted the motion *non obstante,* and, in the entry of judgment for defendant, recited that the prior judgment for plaintiff had been entered inadvertently and by mistake and ordered it vacated. Plaintiff appealed from the second judgment. Defendant formally abandoned its first notice of appeal and took cross-appeal, asking, if the second judgment be reversed, that the first judgment be also reversed, with or without a new trial, as the court may determine. Plaintiff contends that the court had no jurisdiction to hear the motion *non obstante* and enter the second judgment.

The appellate rules do not impair the power of the trial court to correct its records to set out truly its proceedings. The court had authority to vacate the judgment inadvertently and prematurely entered. *Wulff* v. *Bossler,* 199 Mich. 70; *Stanaback* v. *McFadden,* 225 Mich. 452; *Sheltrown* v. *Railroad Co.,* 245 Mich. 58; *Kintz* v. *Galvin,* 219 Mich. 48. The order of vacation was not, in effect, to set aside a valid judgment, but rather to correct the records to show that no judgment had been entered. The first judgment entry having been set aside, the notice of appeal fell with it.

Judgment for defendant affirmed, with costs.

POTTER, SHARPE, NORTH, WIEST, and BUTZEL, JJ., concurred. CLARK, C. J., and McDONALD, J., did not sit.