FORMAN *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.

1. TRIAL—MOTION FOR DIRECTED VERDICT—EMPSON ACT—MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO.

Where motion for directed verdict has been made in a jury trial and the court has reserved decision thereon under the Empson act, a motion for judgment *non obstante veredicto* may be made after verdict and judgment and the court may set aside the judgment as having been improvidently entered but where a motion for directed verdict was not made before verdict the motion for judgment *non obstante veredicto* subsequent thereto and judgment for defendant thereon was improper (3 Comp. Laws 1929, § 14531, as amended by Act No. 44, Pub. Acts 1939).

Per STARR, BUTZEL, SHARPE, and BOYLES, JJ.

2. INSURANCE—DISABILITY BENEFITS—ADMISSION OF TESTIMONY—WEALTH OF PLAINTIFF—PREJUDICE.

Since disability insurance is designed to provide a substitute for loss of earning capacity because of bodily injury or disease and does not insure against loss of income, admission over repeated objections of plaintiff's attorney of irrelevant and incompetent testimony which tended to show plaintiff's wealth constituted prejudicial and reversible error.

3. SAME—TOTAL AND PERMANENT DISABILITY BENEFITS—BURDEN OF PROOF.

In action on insurance policy for total and permanent disability benefits, plaintiff has the burden of proof of establishing continuing physical disability at the time of the trial, notwithstanding defendant insurer had previously made some payments therefor.

Per NORTH, C. J., and STARR, WIEST, BUTZEL, SHARPE, and REID, JJ.

Appeal from Wayne; Webster (Arthur), J. Submitted October 11, 1944. (Docket No. 33, Calendar No. 42,832.) Decided November 30, 1944. Rehearing denied January 11, 1945.

Assumpsit by Barney Forman against the Prudential Insurance Company of America, a New Jersey corporation, on disability insurance policies. Verdict and judgment for defendant. Plaintiff appeals. Reversed and new trial granted.

*Sempliner, Dewey, Stanton & Honigman* (*Jason L. Honigman* and *Norman Sommers,* of counsel), for plaintiff.

*Dickinson, Wright, Davis, McKean & Cudlip* (*Max L. Veech,* of counsel), for defendant.

WIEST, J. This is an action to recover monthly payments for disability under supplemental provisions in two life insurance policies issued by defendant to plaintiff in August, 1926. The policies provided that "If the insured shall become totally and permanently disabled, either physically or mentally from any cause whatsoever, to such an extent that he is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value," the company would pay him $100 a month under each policy.

In 1928, plaintiff had thrombo-phlebitis of his right thigh, leg and foot and defendant paid him $200 per month until April, 1942, when it was stopped and this action was brought to recover the monthly payments from that time to the date of trial in September, 1943. Trial by jury was had, with verdict and judgment for defendant. At the close of the proofs plaintiff did not move for a directed verdict in his favor but, after judgment, moved for judgment *non obstante veredicto* or a new trial. The motion was denied and plaintiff reviews by appeal.

The motion for judgment *non obstante veredicto* after verdict and judgment thereon for defendant

was improper.  Court Rule No. 37, § 8 (1933), *Wulff*
v. *Bossler,* 199 Mich. 70; *Yerkes* v. *Antrim Circuit
Judge,* 200 Mich. 443; 3 Comp. Laws 1929, § 14531
as amended by Act No. 44, Pub. Acts 1939 (Comp.
Laws Supp. 1940, § 14531, Stat. Ann. 1944 Cum.
Supp. § 27.1461).

Denial of the motion for new trial may be consid-
ered and brings questions on rulings at the trial and
whether the verdict was against the great weight of
the evidence.

Plaintiff's disability was physical and the court
was in error in permitting counsel for defendant, on
cross-examination of plaintiff, and over objection
thereto, to inquire into his finances.  Counsel, in
urging its admissibility, stated it was very import-
ant and the court ruled it had a bearing upon the
issues.  It was wholly beside the mark even though
it brought out his mental acumen in managing his
finances.  A man, bedfast by reason of physical dis-
ability, may manage his finances.

In the brief for defendant it is said:

"If the appellant had any thought that the testi-
mony would create an inference that appellant 'had
independent wealth and hence, would not be harmed
by the loss of disability benefits,' he was at liberty
to request the court to instruct the jury not to base
a verdict upon any such consideration.  No such re-
quest was made."

This begs the question.  Plaintiff had a right to
stand upon the objection and now press error on the
ruling of the court.

Plaintiff testified that he could not do any con-
tinuous work requiring him to use his right foot in
standing, and in this he was supported by the testi-
mony of two physicians.  The one physician called
by defendant agreed that plaintiff has chronic
thrombo-phlebitis of the right leg but thought it a

mild type, not disabling him from carrying on work as a tailor or some other work not requiring him to stand on his foot much of the time.

Plaintiff testified that he tried to so carry on as a tailor but could not do so because the occupation required him to stand on his feet. He tried other employment but for the same reason could not continue. He could perform some sedentary work but is barred therefrom by lack of education. He was born in Russia; came to this country at the age of 20 years; had very little education; was a tailor by occupation, and the record does not disclose any sedentary occupation open to him or which he is qualified to fill. The record negatives the fact that he is a malingerer.

Plaintiff's application for the insurance stated his occupation as "Making plain and fur garments. All-around ladies' tailor," and the contract of insurance made plaintiff's application a part thereof. The burden of proof was upon plaintiff to establish continuing and physical disability at the time of the trial and the long-time payments by defendant in recognition of plaintiff's disability did not shift the burden.

The record has been read and we find the verdict against the great weight of the evidence. We may not set aside the verdict and direct judgment to be entered in favor of plaintiff, for we have no more power in the premises than had the circuit judge, as before mentioned.

Defendant insists upon strict application of the letter of the policy in its favor and claims thereunder that plaintiff had no total permanent and continuing disability. Defendant, under a like policy, was advised to the contrary in *Rezendes* v. *Prudential Insurance Company of America,* 285 Mass. 505 (189 N. E. 826), from which we quote the following:

"The policy in referring to disability of the insured repeatedly employs the absolute words 'total' and 'permanent' and their derivatives and synonyms but from a reading of the policy as a whole it is manifest that it was not intended that those words should be taken in a literal sense or given an absolute effect. So far as concerns totality of disability complete physical or mental incapacity is not necessary; the policy in terms makes the obligation of the insurer rest upon a lesser disability than 'total.' He is entitled to the stated monthly income if he is 'totally disabled   *   *   *   to such an extent that he was rendered wholly and continuously unable' to do any remunerative work. Something less than absolute permanency of disability is contemplated. *   *   *

"Where the language permits two rational interpretations, that more favorable to the interests of the insured is to be taken. The insurer chose the words to express the contract of indemnity and which ever of two warranted interpretations of language best effectuates the main manifested design of the parties is to be favored.   *   *   *

"The disability of an insured who still retains the power to do some work may be within the policy definition if he is 'wholly and continuously unable' to do any work of such character that he can receive therefor any financial compensation. If the quoted words be taken in their absolutely literal sense no obligation of the insurer to pay disability benefits would arise if in any period of 90 consecutive days the insured for some space of time, however short, had the physical or mental ability, regardless of the harmful consequences to himself, to do some work, however little, for which he might be paid any financial compensation, however small.

"We are of the opinion that the language of the policy defining disability in terms of the insured's capacity to do any work for financial compensation

should not be given such a narrow and literal construction as to ignore serious or fatal consequences which would be likely to result if he undertook to perform such work. As words are understood by reasonably intelligent men, one is wholly unable to work if he can do no work without seriously endangering his health or risking his life.''

*Boss* v. *Travelers Ins. Co.,* 296 Mass. 18 (4 N. E. [2d] 468), is to like effect. See, also, *Adamaitis* v. *Metropolitan Life Ins. Co.,* 295 Mass. 215 (3 N. E. [2d] 833).

In *Duhaime* v. *Prudential Insurance Company of America,* 86 N. H. 307 (167 Atl. 269), it was said:

''In determining when an insured is 'permanently disabled * * * or incapacitated * * * to such an extent that he * * * is * * * wholly and permanently unable to engage in any occupation or * * * work for * * * compensation of financial value,' regard must be had to more than his physical condition. It is self-evident that an injury which might reduce an illiterate laboring man to a condition whereby he could only earn his living by begging, might not in any wise impair the earning power of a business or professional man. Regard must be had to the insured, to his age, education, experience, training and capabilities. The insurer cannot avoid the payment of benefits because theoretically the insured could educate himself for some non-manual employment.''

See, also, *Janney* v. *Scranton Life Ins. Co.,* 315 Pa. 200 (173 Atl. 819).

In *Atlantic Life Ins. Co.* v. *Worley,* 161 Va. 951, 960 (172 S. E. 168), the court stated the sensible rule—

''Total and permanent disability, as used in insurance policies, is a relative expression. It does not mean absolute incapacity, mental and physical. The

term must be construed rationally and practically and the trial court should have instructed the jury on the meaning of total and permanent disability in the light of the almost unanimous judicial interpretation of those words. The jury should have been told that the disability contemplated by the policy did not mean a state of absolute helplessness, but meant the inability to do substantially all of the material acts necessary to the prosecution of any occupation for remuneration or profit in substantially the customary and usual manner in which such occupation is prosecuted. This would have been an equitable and reasonable interpretation of the term. Contracts of insurance should receive a reasonable construction so as to effectuate the purposes for which they are made. Legal effect should be given to the language used, and the object to be accomplished by the contract should be considered in interpreting it. Such a rule would not require the literal interpretation which would render it necessary that the insured be in a condition of complete helplessness, mentally and physically, and totally unable to do anything at all.''

In *Aetna Life Ins. Co.* v. *Davis,* 187 Ark. 398 (60 S. W. [2d] 912), the court stated:

''It clearly appears from the evidence that the insured was never at any time since April, 1927, able to do all the substantial acts necessary in the conduct of any vocation in which he was fitted to engage in the usual and customary way without peril to his health; he was therefore totally and permanently disabled within the meaning of the policy.''

In that case the insured endeavored to perform available work but could not continue. At the trial one physician was asked if he felt the man was totally disabled when he had recently worked at a job for $2 a day, and he answered, '' 'You can work

a horse when he is sick, but it wouldn't be to the best interest of the horse.' ''

In *Prudential Insurance Company of America* v. *South*, 179 Ga. 653 (177 S. E. 499, 98 A. L. R. 781), the court stated:

"It (the insurer) received a valuable consideration for which it agreed to confer a benefit, and it is presumed that a substantial benefit was intended. If a literal construction is applied in this case, the insured would be required to show a condition of practical helplessness in order to recover. Few people ever arrive absolutely at that condition from a non-fatal accident. The term 'work' is itself ambiguous, having numerous definitions, including (1) mental or physical effort directed to an end; (2) toil or labor; and (3) employment or occupation. * * * Under this policy, any reasonable person would have expected substantial protection, and would never have thought of the disability as one which must incapacitate him to earn the smallest sum in any possible manner. * * *

" 'Under defendant's theory, the plaintiff might embark in the peanut trade or follow the business of selling shoestrings or lead pencils, or follow some similar calling, in which instances under the rule invoked there would be no disability within the meaning of the policy. In our opinion, such was not within the contemplation of the parties. In order to carry out the intent of the parties, it is our duty to disregard the broad language used, which would have the effect to defeat the purpose of the contract and render it a nullity.' ''

In *Forman* v. *New York Life Ins. Co.*, 267 Mich. 426, we held:

"Phlebitis is a stubborn disease. The inflammation may be reduced but exertion of the leg or even general exercise may cause a recurrence of an acute painful condition. Thrombosis involves the danger

of the clot breaking into particles which, carried in the blood stream to the brain or heart, may cause death. * * *

"The medical testimony is that plaintiff could not pursue any suggested vocation with a reasonable degree of regularity or length of time and without hazard of relapse. The doctors opined that plaintiff is not able to engage in any occupation for gain except under circumstances so favorable and fortuitous as to be without the range of probabilities. They also testified that plaintiff's disability is probably permanent. The showing of total permanent disability was ample."

The judgment is reversed and a new trial granted, with costs to plaintiff.

BUTZEL and SHARPE, JJ., concurred with WIEST, J.

BOYLES, J. (*concurring*). Mr. Justice WIEST writes, "The motion for judgment *non obstante veredicto* after verdict and judgment thereon for defendant was improper," citing authority. I agree that this is a correct statement of the law as applied to the instant case. To prevent misunderstanding, however, this statement should be qualified inasmuch as it applies only in case there has not been a motion made for a directed verdict with decision thereon reserved by the court under the Empson act.* Where motion for directed verdict has been made in a jury trial and the court has reserved decision thereon under the Empson act, a motion for judgment *non obstante veredicto* may be made after verdict and judgment and the court may set aside the judgment as having been improvidently entered. *Kintz* v. *Galvin*, 219 Mich. 48; *Stanaback* v. *McFadden*, 225 Mich.

---

* 3 Comp. Laws 1929, § 14531, as amended by Act No. 44, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 14531, Stat. Ann. 1944 Cum. Supp. § 27.1461.)—REPORTER.

452, 455; *Sheltrown* v. *Railroad Co.,* 245 Mich. 58; *Raridan* v. *Bick,* 259 Mich. 200, 205; *Freedman* v. *Burton,* 281 Mich. 208; *Strausser* v. *Sovereign Camp of the Woodmen of the World,* 283 Mich. 370; *Miller* v. *City of Detroit,* 308 Mich. 611.

With this qualification, I concur in the result.

Starr, Butzel, and Sharpe, JJ., concurred with Boyles, J.

North, C. J. (*concurring*). Mr. Justice Wiest has written for reversal and a new trial. I concur in that result but on the sole ground that prejudicial error resulted from the admission of testimony which I think was clearly intended to disclose to the jury that plaintiff (or his wife) possessed substantial financial means. This testimony was prejudicial, pertained to collateral matters, and was not competent as bearing upon the issue of whether plaintiff was engaged in a gainful occupation or capable of being so engaged. While Mr. Justice Wiest indicates that such testimony was improper, he does not state that its admission constituted prejudicial error necessitating reversal. This testimony was elicited by defendant's cross-examination of plaintiff and its character is somewhat disclosed by the following portions of such cross-examination:

"*Q.* Now, what is your present address?
"*A.* 16189 Wildemere.
"*Q.* Do you own or rent that home?
"*A.* I own it."

The foregoing testimony was taken over the objections of plaintiff's counsel; and then again over the objection of plaintiff's counsel the following testimony was taken:

"*Q.* What was the price of that home?
"*A.* $6,800."

The impropriety of permitting this testimony to go to the jury, as well as some of the other testimony of like character, is emphasized by the fact that the record discloses plaintiff prior to his disability had been an industrious man with substantial earnings, at times over $100 a week. The issue in this case was whether plaintiff was still suffering disability when defendant discontinued payments in April, 1942, and thereafter; but the transaction above referred to occurred about the middle of 1939. There was no showing that money used in this investment was obtained by plaintiff as the result of his earnings during the period of claimed disability.

Again the record shows that over objection of plaintiff's counsel the following testimony on plaintiff's cross-examination was taken:

"*Q.* Now, Mr. Forman, along about 1938 or 1939, somewhere along in there, you also bought an interest in a piece of real estate in Pontiac, did you not? * * *

"*A.* * * * I believe it wasn't in 1938. I was laying in the United States Marine Hospital, and an uncle of my wife's asked me to give him some money to invest in the property, and he got the money and he invested, and he took care of everything. All I did is get a check every once in a while."

This cross-examination then continued:

"*Q.* And you sold that property in October of 1942?

"*A.* My wife sold it.

"*Q.* Oh, you conveyed the property to your wife and then she sold it?

"*A.* My wife had it all the time. I didn't have anything to do with it.

"*Q.* But you gave the money to your wife's uncle to buy it?

"*A.* The money is my wife's money, too.

"*Q.* But you gave it to her uncle?

"*A.* Certain money I had at that time, some money was in my name. * * *

"*Q.* Well, I will ask you if this is your wife's signature—referring to Exhibit 14 (a deed to Pontiac real estate).

"*A.* It is."

Thereupon the deed was offered and received in evidence over objection of plaintiff's counsel. There is further testimony of this character; and we quote it in part:

"*Q.* You also have an interest in the Deep Rock Oil Corporation, do you not (plaintiff's counsel objected on the ground the testimony sought 'has no bearing on any issue in this case')? Objection overruled.

"*A.* My wife has $1,500."

It is quite inconceivable that the cumulative result of the testimony of the type above quoted did not have an effect which in the eyes of the jury was prejudicial to the plaintiff. Substantially such was the holding in *Sovereign Camp of the Woodmen of the World* v. *Douglas* (Tex. Civ. App.), 172 S. W. (2d) 982; and *Erreca* v. *Western States Life Ins. Co.,* 19 Cal. (2d) 388 (121 Pac. [2d] 689, 141 A. L. R. 68). We quote from this latter case, p. 397: .

"The insurer also stresses the magnitude of the respondent's enterprise and his income therefrom. Such matters have no proper place in the determination of whether respondent is totally disabled from performing remunerative work. Disability insurance is designed to provide a substitute for earnings when, because of bodily injury or disease, the insured is deprived of the capacity to earn his living. * * * It does not insure against loss of income."

In this jurisdiction it has been quite uniformly held that, if otherwise irrelevant, admission of testi-

mony as to a litigant's wealth tends to create prejudice the same as testimony of poverty tends to create sympathy; and in either case constitutes reversible error.   See *Bennett* v. *Beam,* 42 Mich. 346 (36 Am. Rep. 442); *Johnson* v. *Henry,* 127 Mich. 548; *Harker* v. *Bushouse,* 254 Mich. 187, and cases cited therein.

I concur with Mr. Justice WIEST's holding that under the record in this case plaintiff's motion for judgment *non obstante veredicto* was properly denied and also with the holding that the burden of proof was on plaintiff.

Because of the prejudicial error in the receipt of testimony, the judgment entered in the trial court is reversed and a new trial ordered.   Appellant may have costs in this Court.

STARR, BUTZEL, SHARPE, and REID, JJ., concurred with NORTH, C. J.

BUSHNELL, J., did not sit.