879 A.2d 1049

**GENERAL MOTORS CORPORATION, et al.**

v.

**Randall C. SEAY.**

**No. 66 Sept. Term 2004.**

Court of Appeals of Maryland.

Aug. 10, 2005.

342

David C. Vogel (Sara J. Kagay of Lathrop & Gage L.C., of Kansas City, Missouri) on brief, for petitioners/cross respondents.

Byron L. Warnken (Warnken, LLC of Towson) on brief, for respondent/cross petitioner.

Argued before BELL, C.J., RAKER, WILNER, HARRELL, BATTAGLIA, GREENE, JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

GREENE, J.

On March 24, 2003, a jury in the Circuit Court for Baltimore City found in favor of Randall C. Seay in his wrongful termination case against General Motors Corporation ("GM") and Gerry Grant, a labor relations representative at GM (collectively "GM" unless otherwise indicated). During the trial, GM made a motion for judgment at the close of Seay's case-in-chief and, ostensibly, again at the close of its own case. GM did not, however, renew the motion following rebuttal testimony offered by Mr. Seay. On April 3, 2003, GM filed a motion for judgment notwithstanding the verdict ("JNOV"), or in the alternative a motion for a new trial. Seay opposed the motion but did not raise the issue of GM's failure to renew the motion for judgment following Seay's rebuttal testimony. The

trial court granted the motion for JNOV on May 27, 2003. Seay filed a timely appeal to the Court of Special Appeals which held that GM's right to file a motion for JNOV was relinquished when it failed to renew the motion for judgment following Seay's rebuttal testimony. By petition for writ of certiorari, GM presents the following questions, which we have reworded, for our review:

1. Whether the trial court is entitled to consider a motion for JNOV where a defendant made a motion for judgment following both the close of plaintiff's case and the close of defendant's case, but did not formally renew the motion following protracted argument on the motion and the trial court's ruling?

2. Considering that Seay failed to object to the timeliness of GM's motion for JNOV at trial, should the Court of Special Appeals have ruled that plaintiff's objection was waived and refused to consider the issue when raised for the first time on appeal?

Seay requested, in a conditional cross-petition for writ of certiorari, that if this Court were to grant *certiorari* to GM, we should, in the interest of judicial economy, address the merits of the trial court's ruling on GM's motion for JNOV.

We granted both *certiorari* petitions. *General Motors v. Seay*, 383 Md. 211, 857 A.2d 1129 (2004).

For the reasons that follow, we hold that the trial court erred in granting the motion for JNOV. As we have often said, the Maryland Rules are "precise rubrics" which are to be strictly followed. Maryland Rule 2–532(a) provides that "a party may move for judgment notwithstanding the verdict *only if* that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion." The language is mandatory and unambiguous. Therefore, when GM failed to renew the motion for judgment at the close of all of the evidence as the Rule provides, it lost its right to file a motion for JNOV. Because we hold that the motion was procedurally defective we need not address the merits of the trial court's decision.

## FACTS

Randall C. Seay ("Seay") was employed for thirteen years with General Motors Corporation at its Broening Highway plant in Baltimore City. On February 14, 2000, he was discharged, allegedly for falsifying a workers' compensation claim following an injury to his hand that occurred on November 18, 1999. Seay denies that the claim was false and argues that he was terminated solely because he filed a workers' compensation claim.[1]

On November 18, 1999, Seay began his shift at 4:30 in the afternoon. According to Seay, he left the GM plant at 9:30 p.m. for his "lunch" break. He testified that he drove to Poncabird Pub ("Pub") and purchased a sandwich.[2] Seay saw Barry Blevins, another GM employee, at the Pub. They spoke briefly and then followed each other back to the plant. Seay "punched back in" at 9:43 and, at approximately 10:10 p.m., resumed work. At approximately 11:40 p.m., Seay claims to have injured his hand on the edge of a piece of equipment while performing his job duties in the body shop. At first he tried to stop the bleeding by sucking on his hand and then by rinsing it in the bathroom. His immediate supervisor sent him to the on-site medical department after Seay asked for a band-aid. The nurse in the medical department sent him to Concentra Medical Center for stitches. Subsequently, Seay's hand became infected from human saliva and required surgery. Seay testified that he was hospitalized for four days as a result of the injury. On or about November 27, 1999, after being released from the hospital, Seay filed a workers' compensation claim. He returned to work and was assigned to perform light duties for a period of three months until a

---

1. Seay also presented testimony that he believed one of the reasons he was fired was because Grant was "out to get him" for having filed a grievance with the Union in 1996, complaining that Grant was "out to fire him." Seay testified that Grant was reprimanded following the grievance but there is nothing in Grant's personnel file to support that claim.

2. The "Poncabird Pub," is incorrectly termed "Poncabird Restaurant" in the record, briefs, and transcript.

doctor released him to return to his regular duties. Shortly thereafter, on February 14, 2000, Seay was discharged.

General Motors disputes Seay's version of events. GM claims that Seay left the GM plant during his lunch break, drove to "Jimmy's (Famous Seafood) Restaurant," and was involved in an altercation with another GM employee, Anthony Tucker. GM's version is based on an investigation by Grant, that included interviewing five GM employees and a physician.[3] At trial, GM presented testimony of Tucker and Joseph Wooten. Tucker testified that he was involved in an altercation with Seay and that Seay punched him in the mouth. Wooten testified that he witnessed the altercation and, for the most part, confirmed Tucker's account of the events.[4] They both testified that Seay was not bleeding following the altercation. GM argues that Seay injured his hand during the scuffle, not at work. GM further argues that since the injury did not occur at work, Seay filed a false workers' compensation claim.

On March 3, 2000, prior to Seay filing a civil complaint, the Workers' Compensation Commission ("Commission") awarded Seay workers' compensation benefits. The Commission found that Seay, "sustained an accidental injury arising out of and in the course of employment on November 18, 1999; and f[ou]nd that the disability of the claimant [wa]s the result of the aforesaid accidental injury; and that as a result thereof the claimant was temporarily totally disabled." He was awarded

---

**3.** At trial, Grant testified that he first learned of the alleged fight between Seay and Tucker from a GM employee that he ran into at a nearby Royal Farms store. He stated that he did not think much about the fight at the time because it occurred off of the GM premises. Subsequently, however, when, in the course of his duties, he learned that Seay had filed a workers' compensation claim for an injury that allegedly occurred on the same day as the fight, Grant began his investigation.

**4.** The difference in their testimony related to the duration of the alleged altercation. Tucker testified that the altercation lasted ten minutes while Wooten testified that it lasted five minutes.

$602.00 a week from November 24, 1999, through December 28, 1999.

General Motors sought judicial review of the Commission's ruling in the Circuit Court for Baltimore County. On January 19, 2001, a jury in Baltimore County answered "No" to the question, "Did the claimant sustain an accidental personal injury arising out of and in the course of his employment on or about November 18, 1999?". Based on the jury's finding, the court reversed the Commission's award and disallowed Seay's workers' compensation claim. On February 9, 2001, Seay appealed the decision to the Court of Special Appeals. General Motors filed a Motion to Dismiss, which was granted on September 11, 2001, when Seay failed to respond in a timely manner.[5]

Subsequently, on March 14, 2001, Seay filed a complaint in the Circuit Court for Baltimore City against GM and Grant, as well as GM employees, Jerome Jones,[6] Anthony Tucker, and Joseph Wooten. GM removed the action to the U.S. District Court for the District of Maryland on the grounds that Seay's claims were preempted under the Labor Management Relations Act.[7] Seay subsequently dropped the claims in his complaint that were based on the collective bargaining agreement ("CBA"), and on October 24, 2001, the case was remanded to the Circuit Court for Baltimore City.[8]

5. The appeal was dismissed under Rule 8–602(a)(7) because appellant's brief was not filed within the time specified by Rule 8–502.

6. Jerome Jones is Grant's supervisor. He approved Grant's recommendation to terminate Seay.

7. Seay was employed by GM under a collective bargaining agreement between GM and the United Automobile, Aerospace and Agricultural Implement Workers of America.

8. Seay's original complaint included claims for Count I (Wrongful Termination), Count II (Interference with Economic Relations), Count III (Defamation), Count IV (Breach of Contract), Count V (Intentional Infliction of Emotional Distress), and Count VI (Negligent Retention). Counts II, IV, and VI were based on the CBA. In remanding the case to Baltimore City, the Federal District Court noted that "when this action is returned to the state court, [Seay] will certainly be estopped from

On February 22, 2002, Seay filed his third amended com-
plaint alleging wrongful termination, defamation, and inten-
tional infliction of emotional distress.[9] At the end of Seay's
case-in-chief, both parties made a motion for judgment. The
court reserved its ruling on the motion until the next day
following the close of GM's case-in-chief. The court then
ruled on the motion made at the close of the plaintiff's case.
The court stated "[a]s to defendant's motion for judgment at
the close of the plaintiff's case, I have up to this point, heard
motion and argument and I have granted the motion for
judgment [on the wrongful termination count] in favor of
defendant's Tucker and Wooton, and as of this moment denied
it as to defendants General Motors, Grant, and Jones." The
court also granted the motion for judgment for all defendants
as to the defamation and intentional infliction of emotional
distress counts.

Following the court's ruling on the motions at the close of
the plaintiff's case, General Motors presented argument re-
garding the proper parties in the wrongful termination action
and whether Seay met his burden of demonstrating that he
was fired "solely" for filing a workers' compensation claim.
GM stated:

> I'm sorry for being redundant from yesterday but since this
> is also up for a new motion for judgment at the close of all
> of the evidence [10] we would state that there has been
> evidence clearly from the plaintiff that there were other

---

using the denial of any rights or protections afforded by the CBA as
support for his state law claims."

**9.** For purposes of this opinion, we interpret the theory of "wrongful
termination" to be synonymous with "wrongful discharge."

**10.** We note that it appears from the record that neither party did, in
fact, make a motion for judgment following the close of the defense's
case, although counsel for Seay did at one point state "[a]nd I would
just note, just to preserve the right of our motion for judgment I'm sure
they would have one as well."

reasons involved here. It was unequivocal that there were other reasons involved here.

Following argument by Seay, the court held:

Okay. Again, at least taking these separately, at the junction at the close of the plaintiff's case facts and inferences in a light most favorable I'll deny the motion still as to General Motors, Mr. Grant and Mr. Jones and then even at the close of all of the evidence I think there—I'm persuaded that there is sufficient to allow the jury to sort out whether solely because he filed a workers' compensation claim or because he filed a false claim, and that's something—that's why we have juries to sort out.

Over GM's objection, Seay's counsel then presented rebuttal testimony. The testimony was offered to rebut Jones's testimony that Seay had approached him at Bally's Gym on a number of occasions and made remarks about the ongoing dispute. Jones testified that on one occasion Seay approached him and stated, "I'm going to get you in court." On another occasion, following the trial in Baltimore County, Seay approached him and allegedly said:

He said; that's okay. I'm going to sue you guys. I don't even want my job back because I'm going to take General Motors for millions of dollars, and once again I said; just leave me alone. I don't want to talk about it. It's in the courts. Just leave me alone. He said; you're not at General Motors now. You don't have any authority here. I said; just leave me alone I have nothing to say to you.

In rebuttal, Seay denied saying he was going to "get him or anything like that." He testified that:

Well like I said earlier I just said; why are you doing this to a brother you know like that? Then he said; you're not my brother. Then he was like we're going to go to a court of law in Baltimore County this time and we're going to reverse this decision that you've got in your favor.

General Motors neglected to renew the motion for judgment following this testimony.

On March 24, 2003, a jury found that Seay was wrongfully terminated by GM and Grant. The jury awarded Seay a judgment in the amount of $300,000 against GM and $200,000 against Grant. The jury found in favor of Jones. A mistrial was declared on the issue of punitive damages when the jury was unable to reach a unanimous decision. On April 3, 2003, GM filed a motion for JNOV, or in the alternative a motion for a new trial. Seay's counsel filed a motion in opposition to GM's motion for JNOV challenging the merits of the motion but not on the basis that it was procedurally defective. On May 27, 2003, the trial court granted the motion for JNOV in favor of GM, Jones, and Grant and set aside the jury's verdict.

On June 25, 2003, Seay filed a notice of appeal. Notwithstanding Seay's failure to preserve the issue, the Court of Special Appeals reviewed the trial court's ruling on the motion for JNOV and reversed that ruling. On May 21, 2004, in an unreported opinion, the intermediate appellate court held that, although the testimonial evidence by Jones was immaterial and extraneous,

> [w]hen [GM] failed to renew their motion for judgment at the conclusion of appellant's rebuttal testimony, which concluded all of the evidence in the case, their right to file a motion for JNOV thereafter was effectively relinquished.

*Seay v. General Motors, Corp.,* No. 982, slip op. at 7–8 (September Term, 2003).

## DISCUSSION

### I.

██ GM concedes that under the Maryland Rules the motion for JNOV was procedurally defective when it failed to renew it at the close of all of the evidence. It maintains, however, that this oversight was trivial because the evidence presented was extraneous and had no substantive effect on the trial court's ruling. General Motors contends that the motion for JNOV was procedurally proper under the federal rules and that we should review and reinterpret Maryland's mandatory

JNOV rule to follow the more permissive view recognized by the majority of federal circuits that have addressed the issue.

Seay contends that the intermediate appellate court ruled correctly when it reversed the trial court's grant of GM's motion for JNOV. According to Seay, when GM failed to renew its motion for judgment at the close of all the evidence, as mandated by Md. Rule 2–532(a), GM waived its right to place a motion for JNOV before the trial court and the trial court improperly ruled on it.

Maryland Rule 2–519, which governs motions for judgment, provides in pertinent part:

(a) **Generally.** A party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence.

(d) **Reservation of decision in jury cases.** In a jury trial, if a motion for judgment is made at the close of all the evidence, the court may submit the case to the jury and reserve its decision on the motion until after the verdict or discharge of the jury.

Md. Rule 2–519. Our rule governing a motion for JNOV is Md. Rule 2–532(a). It states in relevant part:

(a) **When permitted.** In a jury trial, a party may move for judgment notwithstanding the verdict *only if* that party made a motion for judgment at the close of all the evidence and only on the grounds advanced in support of the earlier motion.

Md. Rule 2–532(a) (emphasis added).

█ In Maryland, a motion for judgment, made at the close of an opponent's case and thereafter denied, is withdrawn when the party making the motion offers evidence in its own case-in-chief. But, after offering evidence, the motion may be re-offered or renewed. *Smith v. Carr,* 189 Md. 338, 56 A.2d 151 (1947). In addition, if the court denies the motion for judgment, the moving party may make a motion for JNOV following an adverse jury verdict. *See* Md. Rules 2–519 and

2–532(a). A motion for judgment must be made at the close of all the evidence before a motion for JNOV can be properly made and ruled on by the court. Md. Rule 2–532(a). *See* P. Niemeyer & L. Richards, *Maryland Rules Commentary,* 430–31 (2003) (Noting that in Maryland, "[t]he safe practice is to renew the motion routinely at the conclusion of all the evidence. The renewal of a motion for judgment also preserves the opportunity to move for a motion for judgment notwithstanding the verdict under Rule 2–532(a) in the event that the verdict goes against the moving party.").

When we interpret the Maryland Rules of Procedure, we apply the same rules of construction that we use to interpret statutes. *Pickett v. Sears, Roebuck & Co.,* 365 Md. 67, 78, 775 A.2d 1218, 1224 (2001) (citations omitted). We endeavor to "ascertain and effectuate legislative intent." *O'Connor v. Baltimore County,* 382 Md. 102, 113, 854 A.2d 1191, 1198 (2004); *Jones v. State,* 336 Md. 255, 260, 647 A.2d 1204, 1206 (1994). The "goal of our examination is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision, be it statutory, constitutional or part of the Rules." *Davis v. Slater,* 383 Md. 599, 605, 861 A.2d 78, 81 (2004). Accordingly, we must ascertain the intent of this Court from the language of both Rule 2–519 and 2–532, requiring that all the evidence be completed before a party may move for judgment or JNOV in a jury trial.

Maryland Rule 2–532 was adopted in 1984. It is a compilation of Rule 563 and Fed.R.Civ.P. 50. The first Maryland rule discussing motions for JNOV was Trial Rule 8. Later, the Rules Committee drafted several new trial rules, including the motion for JNOV, to reduce costs to litigants and promote time efficiency by reducing both retrials and duplicate trials due to errors. *See* 1947 Cumulative Supplement to the Annotated Code of the Public General Laws of Maryland, Explanatory Notes at 2073. The Rules Committee noted that trial errors could not be completely eliminated; however, "it is possible to provide various means for minimizing the likeli-

hood of such errors, or for correcting them.... A number of devices for these purposes have been developed ... includ[ing] ... judgment notwithstanding the verdict...." *Id.*

The specific reason the Committee drafted Rule 8 was:

At present when a party moves at the close of the evidence for a directed verdict, the Court faces a dilemma if the question is doubtful. If the verdict is directed and the ruling reversed on appeal, a new trial is required; while if the lower court refuses the motion, but concludes after the verdict that the motion should have been granted, it can only grant a new trial, although the Court of Appeals could now enter the proper judgment.

To correct this, many states have authorized the lower court to enter judgment notwithstanding the verdict. Under this practice, after the verdict or disagreement of the jury, the party who moved for the directed verdict may renew his motion within a specified time, and the court, if convinced that judgment should have been directed, may enter judgment accordingly despite the verdict or disagreement of the jury. The opposing party may, of course, appeal from this ruling and the upper court, if it reverses on this ground, may reinstate the verdict.

*1947 Explanatory Notes,* Trial Rule 8 at 2085–86.

The 1941 version of Trial Rule 8 did not include the mandatory language of today's Rule 2–532(a). *Compare,* 1943 Supplement to the Annotated Code of the Public General Laws of Maryland, Trial Rule 8 at 1219–20, "(a) Whenever a motion for a directed verdict made by a party at the close of all the evidence is denied ..." *with* Rule 2–532(a), "In a jury trial, a party may move for judgment notwithstanding the verdict *only if that party made a motion for judgment at the close of all the evidence...."* The 1941 version of Trial Rule 4, for Directed Verdicts, however, did include the mandatory language of Rule 2–532(a). It stated in relevant part:

A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted without having re-

served the right to do so and to the same extent as if the motion had not been made, but in so doing he withdraws the motion.

Trial Rule 4, 1943 Supplement at 1219–20.

From the inception of Trial Rule 8 and Trial Rule 4 we have applied a strict compliance prerequisite to the motion for JNOV. The strict compliance language can be traced back sixty years:

Trial Rule 8 ... introduces in this State a new practice with respect to judgments n.o.v. .... But for the rule to be applicable the case must be one in which the party may be entitled to a directed verdict and the party *must* move for such a verdict at the close of all the evidence.

*Hajewski v. County Com'rs of Baltimore County,* 184 Md. 161, 165, 40 A.2d 316, 318 (1944) (emphasis added).

In a case factually similar to the case at bar, *Baltimore Harbor Charters, Ltd. v. Ayd,* 134 Md.App. 188, 759 A.2d 1091 (2000), *affirmed in part on other grounds, vacated in part, and remanded,* 365 Md. 366, 780 A.2d 303 (2001), the Court of Special Appeals held that the trial court did not err when it denied a motion for JNOV that was not preceded by a motion for judgment at the close of all of the evidence by the party seeking the JNOV. *Baltimore Harbor Charters, Ltd.,* 134 Md.App. at 198, 759 A.2d at 1096. In that case Baltimore Harbor Charter, Ltd., (BHC), the defendant, conceded on appeal that it failed to renew its motion at the close of all the evidence but contended that its motion at the end of Ayd's case-in-chief was sufficient to preserve its right to make a motion for JNOV.[11] The intermediate appellate court conclud-

---

11. The facts as found by the Court of Special Appeals are as follows: BHC made a motion for judgment at the close of Ayd's case-in-chief. That motion was denied. At the close of BHC's defense case, Ayd also moved for judgment. When Ayd's motion was denied, BHC requested that the case be reopened to introduce 'some pieces of evidence,' and Ayd objected. The court reopened the case, stating: 'I'm going to allow you to reopen your case and the Motion for Judgment would have to come after.' After additional documents were moved into evidence, Ayd renewed his motion for judgment on

ed that the trial judge did not err in denying BHC's motion for JNOV "because BHC failed to follow the dictates of Rule 2–532(a) that a motion for judgment must be made at the close of all the evidence in order to preserve the right to move for a JNOV." *Id.* The issue of the JNOV motion was not raised in the petition for writ of certiorari in that case. We note, however, that the Court of Special Appeals' conclusion regarding the motion is consistent with our holding here today.

Historically, our motion for JNOV was never meant to be simply a guide to follow but rather to set forth a precise and unambiguous requirement for the trial court.[12] We abide by the plain language of Md. Rule 1–201(a), which, in part, states that, "[t]hese rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. When a rule, by the word

the counterclaim. Ayd then took the stand to offer rebuttal testimony. After the close of Ayd's rebuttal case, Ayd renewed his motion for judgment on the counterclaim, and again, it was denied. BHC did not renew its motion.... [T]he transcript clearly reveals that BHC did not suggest that its motion be renewed or reincorporated, and the court did not suggest that its denial of Ayd's motion was also a denial of a motion by BHC.
*Baltimore Harbor Charters,* 134 Md.App. at 197–198, 759 A.2d at 1096.

**12.** Maryland's requirement that a motion for judgment be made is similar to other states that require a motion for a directed verdict as a prerequisite to filing a motion for JNOV. *See* Alabama, *German Auto Inc. v. Tamburello,* 565 So.2d 238 (Ala.1990); Arkansas, *Security Pacific Housing Services, Inc. v. Friddle,* 315 Ark. 178, 866 S.W.2d 375 (1993); California, *In re Caldwell's Estate,* 216 Cal. 694, 16 P.2d 139 (1932); Florida, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Anderson,* 501 So.2d 635 (Fla.Dist.Ct.App.1986); Idaho, *Helgeson v. Powell,* 54 Idaho 667, 34 P.2d 957 (1934); Kentucky, *Huddleston v. Murley,* 757 S.W.2d 216 (Ky.Ct.App.1988); Maine, *Arel v. Poirier,* 533 A.2d 1285 (Me.1987); Massachusetts, *Hatton v. Meade,* 23 Mass.App.Ct. 356, 502 N.E.2d 552 (1987); Michigan, *Forman v. Prudential Ins. Co. of America,* 310 Mich. 145, 16 N.W.2d 696 (1944); Minnesota, *Wilcox v. Schloner,* 222 Minn. 45, 23 N.W.2d 19 (1946); Nebraska, *Palmtag v. Gartner Const. Co.,* 245 Neb. 405, 513 N.W.2d 495 (Neb.1994); New Jersey, *Sun Source, Inc. v. Kuczkir.,* 260 N.J.Super. 256, 615 A.2d 1280 (1992); North Carolina, *Tatum v. Tatum,* 318 N.C. 407, 348 S.E.2d 813 (1986); North Dakota, *Baird v. Stephens,* 58 N.D. 812, 228 N.W. 212 (1929); South Carolina, *Benton & Rhodes, Inc. v. Boden,* 310 S.C. 400, 426 S.E.2d 823 (Ct.App. 1993).

'shall' or otherwise, mandates or prohibits conduct, the consequences of noncompliance are those prescribed by these rules or by statute." As we have said time and time again, the Maryland rules are "precise rubrics," which are to be strictly followed. *Robinson v. Board of County Comm'rs,* 262 Md. 342, 346, 278 A.2d 71, 73 (1971) (quoting *Brown v. Fraley,* 222 Md. 480, 483, 161 A.2d 128, 130 (1960)); *Noble v. State,* 293 Md. 549, 557, 446 A.2d 844, 848 (1982) (stating that, "[t]his Court has firmly adhered to the principle that the rules of procedure are precise rubrics to be strictly followed, and we shall continue to do so"); *Countess v. State,* 286 Md. 444, 463, 408 A.2d 1302, 1311 (1979); *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 570, 270 A.2d 476, 479 (1970); *see also Jackson v. State,* 358 Md. 612, 623, 751 A.2d 473, 479 (2000) (stating that, "our adherence to the more general principle that the rules of practice and procedure adopted by this Court are to be strictly followed ...."). Maryland case law is well settled on this issue.

The federal circuits, however, are split regarding whether a motion or renewal of a motion for judgment at the close of all the evidence is a mere technicality or a prerequisite to a post-trial motion for judgment. In interpreting the Federal Rule of Civil Procedure 50(a) and (b),[13] some federal courts have

---

**13.** Federal Rule 50(a) motion for judgment, in pertinent part, states:

**(a) Judgment as a Matter of Law.**

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

Federal Rule 50(b) provides in pertinent part:

**(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial.** If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury

abided by the view that "[i]t is well settled that a court can only consider a motion for judgment notwithstanding the verdict *only if* the moving party has previously made a motion for directed verdict at the close of all the evidence."[14] *Portage II v. Bryant Petroleum Corp.*, 899 F.2d 1514, 1522 (6th Cir.1990). *See also* Fed.R.Civ.P. 50, Advisory Committee Notes ("A motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence."). Those circuits requiring strict compliance hold that a motion at the close of plaintiff's case is never sufficient to support a Rule 50(b) motion. *See Mid–America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1364 (7th Cir.1996) (noting that "[t]his [c]ourt gives effect to the plain language of Rule 50(b) by requiring that a motion for judgment as a matter of law be made at the close of all the evidence in order to be preserved for post-trial consideration");[15] *Hudson v. NeXus Worldwide Holdings, Ltd.*, 191 F.R.D. 318 (D.D.C.2000) (holding that defendant's failure to move for judgment as a matter of law at close of all the evidence precluded him from obtaining judgment as a matter of law following an adverse jury verdict, even if the plaintiff was not prejudiced); *Redd v. City of Phenix City, Alabama*, 934 F.2d 1211, 1214 (11th Cir.1991) (stating that in applying Rule 50 the court is, "presented with

---

subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment—and may alternatively request a new trial or join a motion for a new trial under Rule 59.

**14.** The terms "directed verdict" and "JNOV" are no longer used in federal practice to refer to such motions. The 1991 amendments to the Federal Rules of Civil Procedure merged the terms "directed verdict" and "JNOV" into a single term: "judgment as a matter of law." Thus, a motion for directed verdict is now a motion for judgment as a matter of law under Fed.R.Civ.P. 50(a) and a motion for JNOV under Fed. R.Civ. P.50 (b) is considered a renewal of the first motion.

**15.** Interestingly, the position taken by the Seventh Circuit in *Mid–America* is contrary to the circuit's previous position that "advocated a more flexible approach" to Rule 50 *See Bonner v. Coughlin,* 657 F.2d 931 (7th Cir.1981) and cases cited therein.

**358**

a particularly clear and mechanical rule of law; the City did not comply and the district judge may not waive his magic wand dismissing a procedural requirement as a technicality").

■ The requirement that a party must renew the motion for judgment at the close of all the evidence serves two fundamental purposes. First, renewal of the motion "enables the trial court to examine the sufficiency of all the evidence before submitting the question to the jury." *Petit v. City of Chicago*, 239 F.Supp.2d 761 (N.D.Ill.2002). And second, it "alerts the opposing party to any defect in its case, thereby affording it an opportunity to cure any such defect." *Id.* In *Szmaj v. American Tel. & Tel. Co.*, 291 F.3d 955, 958 (7th Cir.2002), the court pointed out that,

> if a motion for judgment as a matter of law is made at the close of plaintiff's case and denied and not renewed at the close of the defendant's case, the plaintiff may assume that the denial was the end of the matter, while if the defendant shows by renewing the motion that the denial was not the end of the matter, the plaintiff may ask and may receive permission from the judge to put in some additional evidence to show that there is a jury issue.[16]

In addition, full compliance with Rule 50 "avoids any question arising under the Seventh Amendment." *Mathieu v. Gopher News Co.*, 273 F.3d 769, 776 (8th Cir.2001) (citations and quotations omitted).

---

**16.** The court in *Szmaj* was presented with the question of whether the mandate of Rule 50 that the motion for judgment as a matter of law be made at the close of all of the evidence applied when the trial court has reserved ruling on the motion made at the close of the plaintiff's case until after the jury verdict. The court stated the purpose of the rule, as quoted above, and noted:

> This rationale collapses when ... the judge takes the original motion under advisement; for then the plaintiff knows at the end of the trial that the question whether the defendant is entitled to judgment as a matter of law is a live one. There is no mousetrapping of the plaintiff in such a case; neither the language of Rule 50(b) nor the committee note suggests that renewal of the motion is required in that circumstance; and requiring a party to file a motion before a previous identical motion has been ruled on is wasteful.

*Szmaj*, 291 F.3d at 958.

While the circuits cited above have adopted a strict compliance view, other federal courts have recognized that "a technical deviation from Rule 50(b)'s command is not fatal." *Riverview Invs., Inc. v. Ottawa Cmty. Improvement Corp.*, 899 F.2d 474, 477 (6th Cir.1990), *cert. denied*, 498 U.S. 855, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990). Deviation may not be fatal because "[t]he application of Rule 50(b) in any case should be examined in the light of the accomplishment of [its] particular purpose as well as in the general context of securing a fair trial for all concerned in the quest for truth." *Boynton v. TRW, Inc.* 858 F.2d 1178, 1185 (6th Cir.1988). To that end, courts have recognized certain exceptions, all of which are coupled with the requirement that the trial court indicate that the renewal of the motion is not necessary. *See Pahuta v. Massey–Ferguson, Inc.*, 170 F.3d 125, 129 (2nd Cir.1999) (noting that, "[i]n the absence of a Rule 50(b) renewed motion or extraordinary circumstances, an 'appellate court [i]s without power to direct the district court to enter judgment contrary to the one it had permitted to stand.'" Additionally, "[f]ailure to comply . . . may be excused only when the district court has indicated that the motion need not be renewed, and the party opposing the motion could not reasonably have thought 'that the movant's 'initial view of the insufficiency of the evidence had been overcome and there was no need to produce anything more in order to avoid the risk of [such] judgment.'" (internal citations omitted)); *Singer v. Dungan*, 45 F.3d 823 (4th Cir.1995) (holding that noncompliance with the rule is excused where "the court somehow indicated that the movant need not renew its motion in order to preserve its right to challenge the verdict" and the earlier Rule 50(a) motion "closely preceded the close of all of the evidence"); *Keisling v. SER–Jobs For Progress Inc.* 19 F.3d 755, 759 (1st Cir.1994) (excusing noncompliance where there is "judicial assurance concerning preservation rights at the time of the motion and . . . brief and inconsequential evidence following the motion"); *Purcell v. Seguin State Bank and Trust Co.*, 999 F.2d 950, 956 (5th Cir.1993) (excusing non-compliance where "the trial court reserves its ruling on defendant's motion for a

directed verdict and the only evidence introduced after the motion is not related to the motion . . ."); *Riverview Invs., Inc.,* 899 F.2d at 477–78 (holding that, "because the District Court indicated to [defendants] that renewal of their motion for a directed verdict was not necessary to preserve their right to move for judgment n.o.v ., and because [plaintiff's] rebuttal testimony was brief and inconsequential, [defendants'] failure to renew its motion for a directed verdict at the end of the rebuttal testimony did not preclude the District Court from granting judgment n.o.v."); *Herrington v. Sonoma County,* 834 F.2d 1488, 1500 (9th Cir.1987) (acknowledging that there are limited circumstances that would excuse non-compliance with the mandate of Rule 50(b) but declining to "depart from [their previous] strict interpretation [of the Rule] here"); *Armstrong v. Federal National Mortgage Association,* 796 F.2d 366, 370 (10th Cir.1986) (holding that, "a defendant's failure to move for directed verdict at the close of all the evidence did not bar consideration of a later motion for judgment n.o.v. when (1) the defendant moved for directed verdict at the close of the plaintiff's evidence; (2) the trial court, in ruling on the motion, somehow indicated that renewal of the motion would not be necessary in order to preserve the issues raised; and (3) the evidence introduced after the motion was brief").

We are not inclined to depart from our state court jurisprudence of strict compliance with the procedural requirements of Rules 2–519 and 2–532 in favor of the more flexible interpretation of Federal Rule 50 as recognized by a number of federal circuits. Even if we were, however, GM still would not prevail. Although Seay's rebuttal testimony may qualify as "brief and inconsequential," there was no indication from the trial judge that GM need not renew its motion at the close of all the evidence as mandated by the federal exceptions.[17]

---

**17.** We further note that the trial court, as was the case in *Szmaj, supra,* did not hold the motion made at the end of the plaintiff's case-in-chief, *sub curia,* until after the jury's verdict, thereby making the need to renew the motion at the close of all of the evidence unnecessary.

General Motors neglected to renew its motion for judgment at the close of all the evidence as Rule 2–519(a) specifies. Pursuant to the Maryland Rules of Procedure, GM's failure to renew the motion resulted in the loss of its right to file a motion for JNOV. As a matter of procedure, the trial judge erred in granting the motion for JNOV. We therefore uphold the intermediate appellate court's decision. Notwithstanding our holding, we refer this matter to the Rules Committee for study and to make any recommendations it deems appropriate with regard to whether we should modify Rules 2–519 and 2–532 to allow trial judges to exercise discretion to excuse, in the interest of justice, minor procedural defaults.

## II.

The question remains, however, whether the issue of GM's procedural compliance with Md. Rule 2–532(a) was properly before the Court of Special Appeals given that Seay raised this issue for the first time on appeal.

General Motors notes that Seay had three opportunities to raise the procedural issue in the trial court but failed to do so. It contends that this failure resulted in the waiver of the issue on appeal. GM cites a number of cases from the Court of Special Appeals in which that court rejected arguments "that were not raised in the circuit court as a defense to the motion and cannot, under Md. Rule 8–131, be raised for the first time on appeal." *McKinney v. State of Maryland,* 99 Md.App. 124, 138, 636 A.2d 10, 17 (1994).

Seay concedes that his trial counsel did not raise the issue of GM's procedural non-compliance in his opposition to the motion at the trial level; instead counsel opposed the motion on its merits. He maintains, however, that because the Court of Special Appeals addressed the issue, the question for this Court is whether the intermediate appellate court abused its discretion in doing so. In support of his position, Seay cites our recent opinion, *Jones v. State,* 379 Md. 704, 843 A.2d 778 (2004), in which we discussed the intermediate appellate

court's authority to decide unpreserved issues and the proper scope of our review of that decision.

In *Jones* we began our analysis with the relevant Maryland Rule, Md. Rule 8–131(a), which provides:

> **(a) Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue to guide the trial court or to avoid the expense and delay of another appeal.

Md. Rule 8–131(a). We noted that "[t]he first sentence of the Rule sets forth the general principle that the question of subject matter jurisdiction may be raised at any time and thus may be raised properly for the first time on appeal." *Jones*, 379 Md. at 712, 843 A.2d at 783. "The second sentence of Rule 8–131(a) sets forth the general proposition that an appellate court *ordinarily* will not consider an issue that was not raised or decided by the trial court." *Id.* The prohibition, however, is not absolute. *Id.* We concluded that, based on the plain language of the Rule, "an appellate court has discretion to excuse a waiver or procedural default and to consider an issue even though it was not properly raised or preserved by a party." *Jones*, 379 Md. at 713, 843 A.2d at 783.[18]

---

18. GM argues that "It would be ironic indeed if GM were not to prevail in this case for failing to raise an issue when it was purportedly required to do so under the rules, while [Seay] could ignore procedural requirements without penalty." The difference in treatments, however, is that Md. Rule 2–532(a) uses mandatory language while Md. Rule 8–131(a) grants the Court discretion to decide an unpreserved issue. *Compare* Md. Rule 2–532(a), "a party may move for judgment notwithstanding the verdict only if that party made a motion for judgment at the close of all the evidence" *with* Md. Rule 8–131(a) "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue to guide the trial court or to avoid the expense and delay of another appeal."

We continued by recognizing that "there is no fixed formula for the determination of when discretion should be exercised, and there are no bright line rules to conclude that discretion has been abused." *Jones*, 379 Md. at 713, 843 A.2d at 784. We set forth two questions that an appellate court should ask itself when deciding to exercise its discretion: (1) whether the exercise of its discretion will work unfair prejudice to either of the parties; [19] and (2) whether the exercise of its discretion will promote the orderly administration of justice.[20] *Jones*, 379 Md. at 714–15, 843 A.2d at 784.

Lastly, we noted that,

[w]e do not reverse the Court of Special Appeals for the exercise of its discretion unless it has clearly been abused. While this Court retains its own independent discretion to hear unpreserved arguments, *Squire v. State*, 280 Md. 132, 134, 368 A.2d 1019, 1020 (1977), that does not mean we review the discretionary functions of the lower appellate court *de novo*. To the contrary, we respect the judgment of the Court of Special Appeals in determining whether it needed to consider the issue for the proper execution of justice, and unless upon our review that court abused its

---

**19.** By way of example, we noted that,

with respect to the parties, a new argument presented by the State would work unfair prejudice to a criminal defendant if its validity depended upon evidence not adduced at the trial level. In such a case, an appellate court's consideration of the argument would be an abuse of discretion under Rule 8–131(a) because it would be manifestly unfair to the defendant who had no opportunity to respond to the argument with his own evidence to the contrary. Similarly, unfair prejudice may result if counsel fails to bring the position of her client to the attention of the lower court so that that court can pass upon and correct any errors in its own proceedings. In addition, the reviewing court should look to the reasons for the default or waiver. The court should consider whether the failure to raise the issue was a considered, deliberate one, or whether it was inadvertent and unintentional.

*Jones*, 379 Md. at 714, 843 A.2d at 784 (internal citations omitted).

**20.** We noted that "[t]his simply means that the Rule seeks to prevent the trial of cases in piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation." *Jones*, 379 Md. at 715, 843 A.2d at 784.

discretion under the Rule, we will not substitute our judgment for theirs. *Fearnow v. Chesapeake & Potomac Telephone,* 342 Md. 363, 384, 676 A.2d 65, 75 (1996); *Ritchie v. Donnelly,* 324 Md. 344, 375, 597 A.2d 432, 447 (1991); *see also State v. Hutchinson,* 287 Md. 198, 204 n. 1, 411 A.2d 1035, 1038 n. 1 (1980)(applying abuse of discretion standard to Court of Special Appeals's discretion to take cognizance of and correct plain error).

*Jones,* 379 Md. at 715, 843 A.2d at 784–85.

With the proper standard of review in mind, we return to the case at bar. We hold that the Court of Special Appeals did not abuse its discretion when it decided the issue of whether the motion for JNOV was properly before the trial court. The question is purely a matter of rule interpretation and does not depend on the presentation of additional evidence. Moreover, had the procedural error been raised at the trial level, the proper result would have been to deny the motion irrespective of any efforts to correct the error. Simply put, the error is not correctable. GM was not, therefore, prejudiced by the exercise of discretion to address the unpreserved ground for objecting to GM's motion.

### III.

In a conditional cross-petition for certiorari, Seay asks that we address the merits of the trial court's ruling on the motion for JNOV. Specifically, Seay argues that even if GM's motion was properly before the trial court, the court erred by evaluating only the evidence presented by him and not the entire record. He also contends that the trial court erred by not viewing the evidence in the light most favorable to the nonmoving party, Mr. Seay. Lastly, he asserts that the trial court erred because there was ample evidence that Seay was fired solely for filing a legitimate workers' compensation claim.

GM responds and asserts that the trial court correctly decided the motion on the merits. It presents three reasons why the motion was properly granted. First, GM contends that "plaintiff's own pleadings, testimony and arguments, dem-

onstrated that his separation from employment was not based solely on his filing a workers' compensation claim." Second, GM contends that collateral estoppel precludes Seay from arguing that the legitimate reason proffered by GM for terminating him, his filing of a false workers' compensation claim, is untrue. And third, GM argues that the jury's verdict is irreconcilably inconsistent because the jury found in favor of Jones, who was involved in the decision to fire Seay, and against GM and Grant.

Because we conclude that the motion was procedurally defective and thus improperly granted, the question of whether it was correctly decided on the merits is moot. We therefore decline to address the motion on its merits. *See Ashleigh Creveling v. Government Employees Insurance Company,* 376 Md. 72, 83 n. 3, 828 A.2d 229, 235 n. 3 (2003) (stating that, ordinarily, courts "will not decide moot or abstract questions, or render advisory opinions. A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that the court cannot provide an effective remedy." (internal citations omitted)); *Reyes v. Prince George's County,* 281 Md. 279, 380 A.2d 12 (1977) (noting that courts "generally ... do not sit to decide abstract questions of law").

## IV. CONCLUSION

In the present matter, the intermediate appellate court merely reversed the trial judge's grant of the motion for JNOV. It should have taken further action and remanded the case to the Circuit Court for additional proceedings. *See* Md. Rule 8–604(d). We have said that

> a general and unqualified reversal of a judgment, order or decree is to nullify it completely and to leave the case standing as if such judgment, order or decree had never been rendered, except as restricted by the opinion of the appellate court.

*Balducci v. Eberly,* 304 Md. 664, 671 n. 8, 500 A.2d 1042, 1046 n. 8 (1985). Because the Court of Special Appeals reversed

the trial court's grant of the motion for JNOV, and we affirmed that decision, the judgment of the trial court will no longer be considered as final. *See* Maryland Rule 2–602(a) (pertaining to an order adjudicating fewer than all of the claims in an action). Upon remand there will be matters open for resolution by the trial court, such as the outstanding claim of Seay for punitive damages. Accordingly,

JUDGMENT OF THE COURT OF SPECIAL APPEALS IS VACATED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND TO REMAND THE CASE TO THAT COURT FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS ARE TO BE PAID BY PETITIONER.